BROUWER, Receiver, &c., *against* J. H. & W. H. HARBECK.

Payments and transfers of property made by a moneyed corporation when actually, though not avowedly, insolvent, or in contemplation of insolvency which actually ensues, with intent to give a preference to creditors, are void within § 9 of the act "to prevent the insolvency" of such corporations (1 *R. S.*, 591), even though knowledge of the pecuniary condition of the company be not brought home to the party receiving the transfers and payments.

ON the 12th of November, 1847, the Pelican Mutual Insurance Company borrowed of C. & G. Belden $2500, giving to the lenders the check of the company for the amount, and delivering to them, as collateral security therefor, three of their subscription notes to the amount of $3500. On the 6th and 7th of December following, the company borrowed $2000 of the defendants in this action, as security for which they transferred to the defendants subscription notes to the amount of $4884.54. The company at the same time was indebted to the defendants in the sum of $3010, "being the adjusted and liquidated amount of a loss upon a policy of insurance relating to the brig *George*, made and issued by the said company." On the 14th of December the defendants discounted for the company all the above mentioned notes delivered to themselves and to C. & G. Belden, and at the request of the company paid out of the proceeds to the Beldens the $2500 loaned by them, with $120 as compensation for the use of the money ; and after retaining, with the company's assent, their own loan of $2000 and the loss on the brig George of $3010, they paid over to the company the balance of $113 in cash. These transactions were all regularly entered on the books of the company.

On the 3d of January, 1848, a petition was presented to the supreme court by creditors of the company, setting forth that it was insolvent, and praying for the appointment

of a receiver; and on the 8th of February following an order was made, under which the plaintiff was appointed receiver. This action was brought in the superior court of New-York to recover the amount of the notes discounted by the defendants, on the ground that the transfer of the notes was made by the company, when insolvent, with a view of giving a preference to the defendants over other creditors of the company, and was therefore void by the provisions of the Revised Statutes.

Upon the trial in December, 1850, before Chief Justice OAKLEY and a jury, the plaintiff proved that various claims had been presented to the company and payment demanded a short time prior to the 14th of December; that the company had admitted the claims to be due, but declared their inability to pay them for want of means. He also proved by the secretary that the company at that time "had no money;" that they "put off payments, and paid as well as they could;" and he gave other evidence tending to show the actual insolvency of the company at the time of the transfer. Upon objection to this evidence by the defendants, the court decided that insolvency meant a failure; that the plaintiff must prove open insolvency; that mere insolvency, unless coupled with proof that the defendants knew the company to be insolvent, would not be sufficient to maintain the action; and that the evidence of insolvency must amount to open, avowed insolvency of the company, or actual insolvency and knowledge thereof by the defendants. After further evidence on the part of the plaintiff, the judge directed a nonsuit, on the ground that there was no evidence of an open or distinct insolvency, and no sufficient evidence of a knowledge by the defendants of any actual insolvency. This judgment was affirmed at general term, and the plaintiff appealed to this court.

*M. S. Bidwell* for the appellant.

*J. W. Gerard* for the respondents.

Brouwer *against* Harbeck.

ALLEN, J.    The Pelican Insurance Company, as a moneyed corporation, was subject to all the provisions of *tit.* 2, *ch.* 18, *part* 1 *of the Revised Statutes* (1 *R. S.*, 588), except those contained in §§ 19 to 25 of the first article, inclusive, from which it was in terms exempted, and the trustees were embraced in the term " Directors," used in that title. (1 *R. S.*, 598, §§ 51, 53 ; *Laws of* 1842, 266, § 22 ; *Laws of* 1843, 65, § 4.)   It was suggested that the provisions of the 9th section of the first article of the title referred to (1 *R. S.*, 591) were inconsistent with the 12th section of the act incorporating the Atlantic Mutual Insurance Company (*Laws of* 1842, 261), which was incorporated in and made a part of the charter of the Pelican Insurance Company, and were therefore inoperative in respect to such company. But § 12 of the act of incorporation does not relate to the *choses in action* and effects generally of the corporation, but only to one particular class of assets, to wit, notes for premiums in advance.    This section enables the company, for the better security of its dealers, to receive notes for premiums, in advance, of persons intending to receive its policies, and authorizes such notes to be negotiated for the purpose of paying claims or otherwise in the course of business, and provides for compensation to the signers thereof on such portions of said notes as may exceed the amount of premiums paid by them ; thus making provision for a particular class of securities, which the company was authorized to take upon contemplated insurances, and to employ the same, as it might and did, without special authority, employ its ordinary assets in the prosecution of its business.    There is no claim that the notes transferred to the defendants were of the class mentioned, and if they had been, it would not affect the result of this action.    The provision is not in conflict with that part of the Revised Statutes which will be hereafter considered.    It was designed mainly to authorize the taking of the securities and their employment as a part of the effects and available assets of the company, and not

to take them out of the equitable provisions of the general law, or to distinguish between them and the other assets applicable to the payment of debts.

A single question, then, is presented by the bill of exceptions in this case, and that relates to the construction and effect to be given to the 9th section of the act entitled, "Regulations to prevent the insolvency of moneyed corporations, and to secure the rights of their creditors and stockholders." (1 *R. S.*, 591.) The preceding section (§ 8) prohibits conveyances, assignments and transfers of any of the effects of a moneyed corporation, exceeding the value of $1000, not authorized by a previous resolution of its board of directors, except in certain specified cases. The section under consideration reads thus: "No such conveyance, assignment or transfer, nor any payment made, judgment suffered, lien created, or security given, by any such corporation when insolvent, or in contemplation of insolvency, with the intent of giving a preference to any particular creditor over other creditors of the company, *shall be valid in law;* and *every person receiving*, by means of any such conveyance, assignment, transfer, lien, security or payment, any of the effects of the corporation, *shall be bound to account therefor to its creditors or stockholders, or their trustees, as the case shall require.*"

After the ruling of the learned judge upon the trial, that proof of open insolvency or a knowledge on the part of the defendants that the company was insolvent, would be necessary to maintain the action, the plaintiff having failed to bring his case within the decision, evidence as to the intent of the transfer would have been out of place, as it would have been immaterial and entirely nugatory. So evidence bearing upon the character of the transfer, as whether it was in whole or in part in payment of a debt, or was a sale of the securities to the defendants upon a valuable consideration, would have been equally unavailing;

so that the sole question is presented by the exceptions taken to these rulings and decisions upon the trial.

The legislature, in all the provisions of the act cited, recognizes and seeks to carry out the doctrine that among creditors "*equality is equity;*" and a prominent object is to prevent all intentional preference among the creditors of insolvent moneyed corporations. The ninth section is incorporated in the statute for that purpose, and has only to do with acts in derogation of the equitable doctrine of equality, and therefore forbids all transfers, payments, &c., by the corporation, when insolvent or in contemplation of insolvency, with intent to give a preference to any particular creditor over others.

So long as insolvency neither exists nor is contemplated, the corporation, like an individual, can appropriate its means to the payment of its debts in such order and in such amounts and proportions as the directors please. But upon insolvency, either actual or contemplated, this power ceases, and the law declares the absolute right of every creditor to share *pro rata* in the assets of the company, and will not suffer this right to be defeated by any act of the corporation or its officers. Hence the rights of purchasers in good faith are not protected as in cases provided for by § 8 of the same act. Such provision was not necessary to protect the rights of parties. The creditor to whom the unauthorized payment or transfer is made is not a purchaser; he parts with nothing, and upon being compelled to account for whatever he may have received, he still loses nothing which he has a right, legal or equitable, to retain. His debt revives and he again becomes a creditor, and shares equally with the others in the property of the debtor. He receives all to which he ever had a legal right; and the equities coincide with the legal rights of the parties.

The statute declares the transfer and payment void in case of actual or contemplated insolvency, if made with

intent to give preference to creditors, irrespective of the
knowledge of the party receiving the transfer or payment.
It is not a question of fraud, or an intent on the part of the
creditor to obtain a preference in the payment of his debt,
but a question as to the actual insolvency, or contemplated,
followed by actual insolvency of the corporation, accompa-
nied with an intent on the part of its directors to prefer
creditors; and as to a legal vested right on the part of the
other creditors.    The legal right of creditors to share
equally in the property should not, in equity, be over-
thrown, except in favor of a purchaser in good faith and
for a valuable consideration ; and a creditor receiving it in
payment of a precedent debt is not such a purchaser.

The learned judge upon the trial took a distinction
between open and avowed insolvency and mere actual
insolvency, for which I find no warrant in the statute.
Probably it was upon the ground that in the former case
knowledge on the part of the creditors would be presumed ;
but the statute does not make the validity of the transfer
or payment depend upon the *bona fides* or knowledge of the
creditor.    The statute is not, that every person receiving
the conveyance or payment, with knowledge of the insol-
vency, shall account therefor, but that every person receiving,
that is, with or without knowledge of the pecuniary condi-
tion of the company, shall account, &c. ; and courts ought
not to engraft on the statute and upon the liability of
parties limitations and qualifications which the legislature
has intentionally omitted.  A corporation, like an individual,
is insolvent when it is not able to pay its debts.   Insol-
vency means a general inability to answer in the course of
business the liabilities existing and capable of being en-
forced. ( *Cutten* v. *Sanger*, 2 *Younge & Jerv.*, 459 ; 2 *Bouv.
Inst.*, 157.)   This term had a well known signification at
the time of the enactment of the law in question, and was
used by the legislature with reference to such known
signification, and had respect solely to the actual condition

and situation of the corporation. This construction is authorized by that which has been given to other statutes very analogous.

Voluntary transfers of property to creditors in satisfaction of debts by insolvents, or by debtors in contemplation of insolvency or bankruptcy, have been set aside, although notice of the bankruptcy or insolvency was not brought home to the creditor. ( *Ogden* v. *Jackson,* 1 *John.,* 370 ; *Gibson* v. *Muskett,* 3 *M. & G.,* 158 ; *Flook* v. *Jones,* 4 *Bing.,* 20 ; *Gorham* v. *Stearns,* 1 *Metc.,* 366 ; 1 *Sandf. Ch. R.,* 207.) The act of the corporation, in making the payment or assignment, is a fraud upon the law providing for equality among creditors, and is therefore void. Whether the Pelican Insurance Company, at the time of the transfer to the defendants, was insolvent or contemplated insolvency, and whether such contemplated insolvency was followed by actual insolvency ; whether the defendants received the transfer as purchasers or creditors, and if as creditors, the intent with which the transfer was made, will, upon a new trial, become important questions, but do not properly arise upon this appeal.

The judgment must be reversed and a new trial granted. Costs to abide the event.

JOHNSON, SELDEN, DENIO and PARKER, Js., concurred.

GARDINER, Ch. J. (dissenting.) By the arrangement of the 14th of December, 1847, the Messrs. Harbeck, the defendants in this cause, at the request of the company, discounted the notes in their own possession and those in possession of C. & G. Belden, and at the request of the company paid out of the proceeds to the Beldens the $2500 loaned by them, with $120 compensation for the use of the money allowed by the company, their own loan of $2000 and the loss on the brig George of $3010, and gave the company the balance, $113, in cash, which completed

the transaction.  The receiver insists that the transfer to the defendants of the effects above mentioned was not authorized by a previous resolution of the board of directors, and was void by the provisions of 1 *R. S.*, 591, § 8.

This question was determined in *Howland* v. *Myer* (3 *Comst.*, 293), in which it was held that any *bona fide* settlement of a presumed loss, contingent or absolute, made by the company with the insured, in the usual course of business, was authorized by the statute under which the corporation in that and in the present case was organized.  The company, as we have seen, procured the notes in question to be discounted in the usual course of business, and directed the proceeds to be applied in payment of their debts.  By the 12th section of the act referred to (*Laws of* 1843, 71), they were authorized to negotiate their premium notes for the purpose of paying claims, or otherwise, in the course of their business.  They have done no more, therefore, than they were authorized to do by the express provisions of their charter.  It might as well be claimed that payment of its own notes by a bank of issue to an amount exceeding $1000 was prohibited.  The exception in the 8th section is not stronger in their favor than the direct authority contained in the 12th section of the act above mentioned is in favor of the payment of which complaint is made in this case.

There is no error in the ruling of the chief justice, that to invalidate the transfer under the 9th section of the act to prevent the insolvency of moneyed corporations, the plaintiff must prove either open or avowed insolvency of the company, or actual insolvency with knowledge thereof by the defendant.  It must be recollected that the defendants were dealing with the company in the usual course of its business.  They had insured, and sustained a loss, the amount of which had been adjusted, and they were, therefore, creditors entitled to their pay.  In receiving payment, if they had done nothing else, it

would be singular if their right to retain the money should depend upon the exact financial state of the corporation at the time ; as to whether their assets equaled, or fell short of or exceeded their liabilities. The absurdity of such a requirement, when the character of these corporations is considered, the peculiarity of their capital and its constant changes and fluctuations, is apparent. There must be an intent to give a preference. (§ 9.) The spirit of the law requires that this intent should be manifested in some way besides the performance of acts which it was the very purpose of the legislature that these corporations should perform, and for which they were created. It seems to me that no one who dealt with the company upon the footing of a customer, ought to be charged with notice of the insolvency of the corporation, unless it was open and notorious, or unless a knowledge of its circumstances was brought home to him.

But, in the second place, the defendants were not the mere recipients of a debt, but purchasers of the notes, or rather of the remaining interest of the corporation in them, for a full consideration, part in cash and part in the discharge of a subsisting claim against the company. The purpose of the insurance company was not to give a preference, but to redeem their property and raise money. The payment in this case was incidental, and by no means the principal object to be effected by the negotiation. To invalidate a transfer under the 9th section, there must be a design to pay or secure one debt or class of debts to the probable exclusion of others. There is not a shadow of proof in the whole case that any such purpose was conceived by the company or suspected by the defendants. The ruling of the learned judge was, therefore, sufficiently favorable to the plaintiff. Actual insolvency was not sufficient, because this might exist without the knowledge of the defendants, and without any intent to give a preference on the part of the company. The least that should be

required was that notice of the insolvency should be brought home to the defendants in the manner suggested. The nonsuit was, consequently, right; for there was no evidence of open or secret insolvency brought home to the defendants, nor any facts from which it could properly be inferred by a jury.

The judgment of the superior court should be affirmed.

EDWARDS, J., also dissented.

RUGGLES, J., did not hear the argument.

Judgment reversed.