DUTCHER, assignee, v. IMPORTERS AND TRADERS' BANK, appellant.

*Insolvency — payments by an insolvent bank, when void — assignee in bankruptcy may recover moneys paid in violation of State law.*

A bank which was insolvent paid a check drawn on it by another bank. *Held*, that such payment was in violation of R. S., sec. 4, tit. 4, chap. 18, pt. 1, and invalid, notwithstanding the insolvency may have been unknown to the creditor.

Actual insolvency, as it regards transfers, is the same in legal effect as the term " in contemplation of insolvency."

The invalidity of a transfer by an insolvent bank does not depend upon the knowledge of the transferee, but upon the fact of insolvency.

An assignee under the U. S. bankrupt law can maintain an action to recover back moneys paid in violation of the statute mentioned.

THIS action was brought by the plaintiff as assignee in bankruptcy of the Central Bank of Brooklyn, under § 35 of the U. S. bankrupt law, to recover $19,300 and interest for moneys paid by the Central Bank, after it had become insolvent, to plaintiff. The action was tried before Justice GILBERT and a jury, and a verdict for the plaintiff directed by the court. The exceptions were ordered to be heard in the first instance at the general term, and judgment in the mean time was suspended.

The bankrupt was a banking corporation organized under the general banking law of this State. It suspended payment on the first day of August, 1870, and on the 2d day of August a petition was presented to the supreme court praying for the appointment of

a receiver, and John L. Spraker, the cashier of the bank, was appointed.

On Saturday, July 30, 1870, the defendant drew its check upon the Central Bank for $19,300 and sent that check to the clearing house in New York, of which it was a member, but of which the Central Bank was not a member. The Central Bank effected its exchanges in the New York clearing house through the Marine Bank of New York. The check was delivered to the Marine Bank on Saturday, in exchange for checks held by it on defendant, and on Monday, August 1st, was delivered by the Marine Bank to the Central Bank, and not being returned was credited as paid by the Marine Bank.

The insolvency of the Central Bank at and before the 1st of August was clearly shown. It was claimed by defendant that the payment of the check was received in good faith and without any reason to believe the Central Bank was insolvent ; that such bank was the collecting agent of defendant, and nothing more, and that the moneys paid on the check were thus collected by such bank for defendant, and that the defendant had no customers' account with such bank.

The check in question was drawn and exchanged through the clearing house, in the usual course of business, under its rules. The defendant had for years been in the habit of receiving from the Central Bank the proceeds of collections by the latter for the former in the same manner.

It was claimed by the plaintiff that such payment was in violation of the national bankrupt law, and also of section 4, title 4, chapter 18, part 1, of the New York Revised Statutes.

*B. F. Tracy*, for plaintiff.

*R. W. Townsend* and *A. R. Dyett*, for defendant.

PRATT, J. As a matter of fact the Marine Bank was the agent of the Central Bank in making the payment to defendant of the money here in controversy. It is not very material what was the course of business between the Central Bank and the Marine Bank as long as the Central Bank furnished the funds and the Marine Bank paid them out for account of the Central Bank. Neither is it material to the defendant how the money was paid to it.

The defendant had a claim against the Central Bank. The Central Bank made provision for its payment and paid it by funds in the possession of the Marine Bank.

The only question to be considered is whether this payment was in violation of sec. 4, tit. 4, chap. 18, part 1 of the Revised Statutes, it being conceded that at the time the payment was made the Central Bank was actually insolvent.

It is now settled that actual insolvency, as it regards transfers, is the same in legal effect as the term "in contemplation of insolvency."

It was the intention of the legislature, in prohibiting these transfers, to establish the doctrine that no person should reap a pecuniary benefit from the wrongful acts of bank officers. This is not only plainly expressed in the statute, but is sound public policy.

The validity of the transfer, or payment, is not made to depend upon the chance that proof is obtainable to show that the creditor or transferee received the assets with knowledge that the debtor corporation was insolvent, but upon the fact that it was insolvent at the time.

The statute has made it the duty of the officers of such corporations, when becoming insolvent, to stop business and distribute the assets equally among its creditors.

This question has been fully discussed and settled in the case of *Robinson* v. *Bank of Attica*, 21 N. Y. 406. See also *Brouwer* v. *Harbeck*, 9 N. Y. 589; *Sibell* v. *Remsen*, 33 id. 95.

That the plaintiff (assignee in bankruptcy) can maintain this suit is settled in this district by the decision in the case of *Hausemann* v. *Claflin* decided at the May general term, 1873.

That there was no disputed question of fact in this case is evinced by there being no request by either party to submit any question to the jury.

The plaintiff is entitled to judgment upon the verdict.

*Judgment upon the verdict.*