CHARLES F. KINGSLEY, AS RECEIVER OF THE URBANA COMPANY, APPELLANT, *v.* THE FIRST NATIONAL BANK OF BATH AND OTHERS, RESPONDENTS.

*Insolvent manufacturing corporation — an offer by the company to allow a judgment to be taken against it, is an unlawful transfer of its property under Revised Statutes, part 1, chap. 18, tit. 4, sec. 4 — when a stockholder and director cannot enter a judgment against it — a corporation may enforce a claim due to it although some of its officers could not enforce claims due to them individually from the same debtor.*

Prior to November, 1880, the Urbana Wine Company, a corporation formed under the general act of 1848, was insolvent, and it continued so to be until January 25, 1881, when the plaintiff was appointed receiver thereof. November 22, 1880, a national bank commenced an action against the company by the service of a summons and verified complaint, and thereafter and on January 12, 1881, a judgment by default was entered against it, upon which an execution was on that day issued and a levy was made upon certain personal property belonging to the company. December seventeenth another action was commenced against the company by one Riggs, who was a stockholder in and director of the company, and thereafter and on January twelfth a judgment was entered therein by default and a levy made upon personal property of the company under an execution issued on that day upon the judgment.

On December 30, 1880, one creditor, and on January 12, 1881, two other creditors, commenced actions against the company, in each of which actions a judgment was entered on January 12, 1881, under an offer duly made, in pursuance of a resolution adopted by the executive committee of the company, by an attorney who had appeared for it. Executions were issued on each of the said judgments on the day it was entered, and levies were made upon the company's personal property thereunder. The claims for which the said judgments were recovered were all *bona fide* ones and justly due, and the company had no defense to interpose thereto and no means of delaying the entry of the judgments after the time for it to answer had expired.

This action was brought by the receiver to have all the said judgments and the liens acquired by the executions issued thereon vacated and set aside as to him, and the property levied upon distributed *pro rata* among the company's creditors.

*Held,* that the judgment recovered in the action commenced by the national bank in November, and the lien acquired by the execution issued thereon, were valid as against the company and the receiver, as the company in no way aided or assisted in its recovery and could not have postponed or prevented its entry.

That the company by offering to allow judgments to be taken against it in the other actions, before its time to answer therein had expired, in effect transferred and assigned its property, in contemplation of insolvency, in violation of section 4 of title 4 of chapter 18 of part 1 of the Revised Statutes, and that the judgments entered upon such consent were thereby avoided and rendered of no effect.

That as Riggs was a stockholder in and a director of the company it was his duty to do all in his power to carry out the object and purpose of the law and secure equality of payment among the creditors of the company; that the entry of the judgment by him in his own favor against the company and the levy made under the execution issued thereon was a violation of such duty and that the judgment should be vacated and annuled.

That as the debt upon which the bank brought the first action was due to it in its corporate capacity, the judgment was not invalidated by the fact that Cook, who was its president, was also an officer and stockholder of the defendant, the wine company.

APPEAL from a judgment dismissing the complaint, entered upon the report of a referee.

The plaintiff was appointed receiver of the Urbana Wine Company, an insolvent corporation, on the 25th day of January, 1881. On the 22d day of November, 1880, the defendant, the First National Bank of Bath, commenced an action against the Urbana Wine Company by the service of a summons and verified complaint on the general superintendent of the company. No defense was interposed to the action, and judgment by default was entered on

the 12th day of January, 1881, at twenty minutes past eleven in the forenoon of that day, for the sum of $25,317.17, and an execution was issued thereon and delivered to the sheriff of the county of Steuben at one o'clock in the afternoon of the same day.

On the 17th day of December, 1880, Elisha Riggs commenced an action in this court against the said Urbana Wine Company, by service of a summons and verified complaint on its president. No defense was interposed, and judgment therein was duly rendered by default on the 12th day of January, 1881, at one o'clock in the afternoon of that day, for the sum of $5,052 ; and at two o'clock in the afternoon of the same day an execution in due form of law was issued on said judgment and delivered to the sheriff of the county of Steuben to be executed. At this time said Elisha Riggs was one of the stockholders and directors of the wine company.

On the 30th day of December, 1880, the defendant, William W. Allen, commenced an action against the said company by the service of a summons and verified complaint on the general superintendent of the company, and the 12th day of January, 1881, the company, by its attorney, made an offer of judgment in said action which was accepted, and on the same day, at five o'clock in the afternoon, judgment was entered in such action for the sum of $5,019.59 damages, and an execution was duly issued thereon at seven o'clock in the afternoon of the same day and delivered to the sheriff of Steuben county to be executed.

On the 12th day of January, 1881, the First National Bank of Bath, commenced another action against the Urbana Wine Company, and the summons therein, together with the verified complaint, was served on the president, and on the same day the defendant, by its duly authorized attorney, made an offer in writing that the plaintiff take judgment therein for the sum of $3,858.59, and thereupon and on the same day the same was accepted by the plaintiff and judgment was entered in the action thirty-five minutes past four o'clock for that amount, and on the same day at seven o'clock and twenty minutes in the afternoon an execution was duly issued on said judgment and delivered to the sheriff of the county of Steuben to be executed.

On the 12th day of January, 1881, the defendant, the Chemung Canal Bank, commenced an action in the Supreme Court against

the said Urbana Wine Company, and the summons and the verified complaint was served on the president that day; and on the same day the attorney for the defendant served an offer of judgment for the sum of $2,772.14, which offer was duly accepted by the attorneys for the plaintiffs therein; and on the same day judgment was entered for $2,790.31 damages and costs; and at seven o'clock and twenty minutes in the afternoon of the same day, an execution was issued on said judgment and delivered to the sheriff of the county of Steuben to be executed.

On the 13th day of January, 1881, the sheriff levied upon and took into his possession the personal property of the said Urbana Wine Company, none of which had been sold by the sheriff at the time of the appointment of the receiver in this action.

After this action was commenced an order was made directing the sheriff to deliver the property to the receiver, and the latter to sell and convert the same into money and to bring the proceeds into court to abide the final judgment in this action.

The receiver prosecuted this action for the purpose of having each of said judgments declared void as against the creditors of the company, and to secure an equal distribution of the avails of the property levied upon among all the creditors of such company.

The action was tried before a referee who decided that each and all of said judgments were rendered upon a good consideration; upheld the levies made by the sheriff by virtue of the several executions, and directed that the several judgments be paid out of the funds in the receiver's hands, derived from the property seized by the sheriff by virtue of such executions.

The plaintiff appeals from such judgment.

*J. F. Parkhurst*, for the appellant.

*Reynolds & Collins*, for the Chemung Canal Bank, respondent.

*Miller & Nichols*, for the First National Bank, of Bath, W. W. Allen and the executors of Elisha Riggs, deceased, respondents.

BARKER, J.:

The Urbana Wine Company was a business and trading corporation, organized under the general law of 1848, and as such was empowered to hold real and personal property; to contract debts

and pay the same by an application of any of its assets in the usual and ordinary course of business. This company became insolvent prior to the commencement of any of the actions in which the several judgments set forth in the complaint were recovered. It is admitted that the company was justly indebted to the several creditors in whose favor judgments were entered, and that there was no defense or offset thereto. The receiver, representing all the creditors of the company, insists that he is entitled to the avails of the property levied upon by the sheriff, that the same may be distributed to and among them as directed by the statute, for the reasons that the judgments and executions are void and a fraud upon the statute, the provisions of which are intended to secure equality among the creditors of insolvent corporations created by and under the laws of this State. The Revised Statutes provide, that it shall not be lawful for any incorporated company to make any transfer or assignment of its property or choses in action, in contemplation of the insolvency of such corporation, to any person or persons whatever, and declares that every such transfer or assignment shall be utterly void. This restraint upon the action of insolvent corporations is a part of chapter 18, part 1, of the Revised Statutes, entitled, " Of incorporations." The fourth title of this chapter relates to and regulates the power and conduct of the directors, officers and agents selected to direct and manage the corporate business, and contains a code of laws for their government which cannot be disregarded with impunity, to the injury of those who are interested in their observance. The provisions of section four are intended to secure equality among creditors, and forbids all transfers that are intended to give preference, or which have that effect in reality. (*Brouwer* v. *Harbeck*, 9 N. Y., 589.)

When a corporation becomes insolvent, dissolution generally follows, and the only means which creditors have to receive portions of their debts, is the right secured to them by the statute; to share in a *pro rata* distribution of the assets of the company. The statute is exceedingly direct and plain on this subject, and does not tolerate any attempt to evade its provisions. The language is : "It shall not be lawful to make any transfer or assignment in contemplation of the insolvency of such company, to any person or per-

sons whatever; and every such transfer and assignment to such officer, stockholder or other person, or in trust for them or for their benefit, shall be utterly void."

These provisions are intended as a restraint on the action of the directors and officers of the company and of them only. It is not the meaning and purpose of the statute to control or direct the action of creditors, who may seek to collect or secure payment of their debts against corporations. The steps which creditors may or may not take, in an effort to secure payment of their debts, is regulated by other laws and rules of procedure.

The executive committee, acting for and in the place of the board of directors, were instrumental in securing to the plaintiffs in such of the judgments as were perfected on consents, a preference over the other creditors of the company. It was not within their power as a board of managers to do a more effective act, with a view of securing priority of payment to this class of creditors. At that time the company was without cash assets; its insolvency was fully established. The personal property owned by the company could not be readily converted into money. The only thing which the company could do to secure these particular creditors was to give them a lien in some way or form on its assets. If the company had attempted by a pledge or mortgage to secure a lien on the same, such transaction would have been in legal effect a transfer of the property and utterly void. The judgments confessed by the company are now sought to be used as the means of transferring the property levied upon for the benefit of the plaintiffs therein. There is no real distinction between a conveyance or transfer, directly from the corporation to its creditor, and one from the sheriff by means of legal proceedings against its property. The sheriff realizes the money by a sale of the property and hands the same over to the creditor, with the consent of the debtor. In the eyes of the law it is a sale, with the consent of the latter, for the purpose of paying his debt. A perfect levy upon property by execution, issued on a valid judgment, followed by a sale, is in every sense of the term a transfer of the property to pay the judgment.

In acquiring the lien now set up by the defendants, they had the consent and active co-operation of the board of directors. Without such friendly action these creditors would not have acquired the

preference which they now claim, and which will be secured to them over the other creditors of the company if the judgments and the levies are upheld. The evidence is full to the point, that both debtor and creditor sought to secure the same end by the commencement of the actions and the offer of judgment. The purpose of all the parties participating in this transaction cannot be disguised. The concert of action between them is visible in every act which transpired, from the service of the summons and complaint, until the delivery of execution into the hands of the sheriff. At the time the resolution was passed by the executive committee, to make offers of judgments in the several suits, the large judgments in favor of the bank had been perfected, and an execution issued thereon, and placed in the hands of the sheriff. Each member of the committee knew these facts before they assembled to pass the resolution which secured to the plaintiffs in those actions the judgments which they respectively sought to obtain. As soon as this action was taken by the committee, they, in a body, together with their attorney, convened in the law office of the plaintiff's attorney, and there prepared the offers of judgment and received the acceptance of such offers. They must have been conscious that the judgments which they consented might be entered, would result in levies on the personal property of the company and be the means of a partial transfer of the same for the benefit of those particular creditors. It was the avowed object of the plaintiffs in the several judgments, and it is so averred in their respective answers in this action, that the purpose of commencing the actions was to enforce the collection of their demands out of the property of the company. It would be against the force of the evidence and all the probabilities of the case, not to believe that the officers of the company who consented to the entry of these judgments were not aware of that fact. It is a case where the debtor has sought the creditor and volunteered assistance and taken active steps to secure payment of his debt in preference to other creditors.

The statute declares the assignment or transfer void, in case the same is made in contemplation of insolvency. The question to be determined is not one of fraud, or of an intent on the part of the creditor to obtain a preference in the payment of his debt; but the simple inquiry is, was there actual or contemplative insolvency and

a transfer of property for the benefit of creditors. If both these facts are established, then the transaction is void. (*Brouwer* v. *Harbeck, supra; Harris* v. *Thompson*, 15 Barb., 62; cited and approved in 33 N. Y., 96; *Robinson as Receiver* v. *The Bank of Attica*, 21 id., 406; *Dutcher* v. *Importers and Traders' Bank*, 59 id., 5; Bump on Fraudulent Conveyances, 256; *In the Matter of Hurst, an insolvent debtor*, 7 Wend., 239.)

The case of *Duncombe* v. *N. Y., H. and N. R. R. Co.* (88 N. Y., 1) cited by the defendants' counsel in support of their views, is not in point, as it was there held that the corporation making the transfer was not at the time insolvent.

Neither is the case of *Dutcher* v. *The Importers and Traders' Bank* (59 N. Y., 5) an authority in support of the argument presented by the learned counsel for the respondent, as the cour there held that the payment made by the bank, although at the time insolvent, was a transaction in the usual and ordinary course of business and before it had closed its doors or refused payment to any of its debtors. I am therefore of the opinion that the three judgments entered upon the offers of the company, together with the executions and levies thereunder, are absolutely void as against the claims made by the receiver to the funds in behalf of the other creditors of the company.

The judgment in favor of Riggs is sought to be enforced by collecting the same out of the personal property owned by the company on the day the judgment was entered. As Riggs was a director and stockholder at the time the action was commenced and the levy made, his action in seeking to secure payment of his own debt in preference to other creditors is in violation of the provisions of the statute restraining transfers of property for the benefit of officers or stockholders. The provisions of the statute are: " Whenever any incorporated company shall have refused the payment of any of its notes, or other evidences of debt, in specie, or lawful money of the United States, it shall not be lawful for such company or any of its officers to assign or transfer any of the property or choses in action of such company, to any officer or stockholder of such company, *directly or indirectly*, for the payment of any debt, *    *    *    and if such assignment or transfer be made, it shall be utterly void." At the time of the commencement

of the action the company had long refused and neglected to pay its debts, and was in fact insolvent. The debt held by Riggs himself, was past due, and because the company neglected to pay it, he had a right of action. The law presumes that he, as an officer of the company, knew that it was insolvent.

He, as a trustee having in charge the affairs of the company, was in duty bound to do all in his power to carry out the object and purpose of the law, and secure equality of payment among the creditors of the company. To uphold the levy in his favor, and permit a sale of the property, with a view of realizing money to pay his debt, is indirectly a transfer of the property of the company for his own benefit, and is construed as illegal by the letter as well as the spirit of the statute. The statute does not prohibit the commencement of an action by a stockholder or officer of an insolvent company, for that may be necessary to secure an adjustment and liquidation of a disputed demand. It is an assignment or transfer of property, either directly or indirectly, in payment of a debt due a stockholder or officer, that the statute intended to prohibit. The statute is intended to be a restraint upon the action of each individual officer, as well as upon the joint action of the several officers, acting collectively as a board of managers. The levy under the execution in this judgment should be held void, as a fraud upon the statute.

The judgment in favor of the First National Bank of Bath was for a just debt past due, and recovered in an action prosecuted in due form of law and by a regular course of procedure, and I am unable to discover any illegality in the steps taken to enforce its payment, and the lien created on the personal property by the levy under the execution should be upheld. There was no defense which the officers could properly and justly interpose to delay the entry of judgment. It is quite apparent that the executive officers of the company were willing that the bank should secure a lien upon the property, and by that means secure preference in payment over other creditors. If the officers of the company could have prevented the entry of a judgment, or the levy under the execution issued thereon, by any action on their part, and omitted to do so, and thus by their passive assistance aided the bank in securing a lien

and a preference, then a very serious question would have been presented as to the validity of the lien as against the rights of the other creditors. They could not have made a valid general assignment of the property and assets of the company, with a view of securing equality of payment to its creditors. Such action would have been void, as all transfers of insolvent corporations are prohibited. (*Harris* v. *Thompson*, 15 Barb., 62; cited, 33 N. Y., 96.)

The directors could have instituted proceedings under the statute concerning the voluntary dissolution of corporations, but before a receiver could have been appointed by due course of procedure, the bank would have been entitled to judgment and execution thereon and thus secured the same priority and preference. (*In the Matter of Waterbury*, 8 Paige, 380 ; *In the Matter of the French Mining Co.*, 12 Hun, 488 ; *Sands* v. *Hill*, 55 N. Y., 18.)

When proceedings are instituted on the petition of the officers of a corporation for its dissolution, there is no power in the court restraining creditors from prosecuting demands against the company to judgment. That power is limited to cases where the action is prosecuted in the name of the people by the attorney general or by a judgment creditor. (Code Civil Pro., § 1806.)

As this company was not a moneyed corporation, section 9, article 1, chapter 18, part 1, of the Revised Statutes, relating to the insolvency of moneyed corporations and to secure the rights of their creditors and stockholders, is not applicable. This was so held in the case of *Robinson* v. *The Bank of Attica* (21 N. Y., 406).

The debt embraced in the judgment recovered by the bank was due it in its corporate capacity, and the circumstance that Cook, who was president of the bank, was also an officer and stockholder in the wine company, does not render the execution issued thereon illegal and void, as being an indirect transfer of the property of the company for the benefit of its officers and stockholders. The money which may be collected upon the judgment may never come to the hands of the stockholders of the bank, as it may be required to pay its own obligations.

The judgment should be so modified as to comply with these views, and as modified affirmed, with costs of this appeal to the

receiver and the First National Bank of Bath, to be paid out of the funds in the hands of the receiver.

SMITH, P. J., and HARDIN, J., concurred.

Judgment modified as stated in the opinion, and as modified affirmed, with costs to the First National Bank of Bath and to the plaintiff to be paid out of the fund. In case the parties differ in regard to the form of the judgment, the same to be settled by Mr. Justice BARKER on four days' notice.