PORTER M. FRENCH, as Receiver of JAMES VICK, seedsman, Appellant, *v.* EZRA R. ANDREWS, Respondent.

*Preferences by an insolvent corporation within section 48 of chapter 564 of the Laws of 1890 — when operative — construction thereof — what is not prohibited thereby.*

In order to make section 48 of chapter 564 of the Laws of 1890 operative, there must be a transfer or assignment of property by a corporation, and this must be done in contemplation of insolvency.

The statute is meant to apply to cases in which it is apparent, to those assigning or transferring its property, that the corporation is in a condition of insolvency; the word insolvency, as used in the statute, means a general inability to pay obligations as they become due in the regular course of business.

In the State of New York an insolvent corporation may, if not restrained by its charter or by statute, apply its assets to the payment of its creditors so as to prefer some to others, and equitable considerations based upon the principle of equality among creditors cannot be invoked to supplement the provisions of section 48 of chapter 564 of the Laws of 1890, which must operate according to its provisions when construed in the light of the legislative intent.

The legislative intent of such statute was not to prohibit every act on the part of the officers of corporations which might enable or tend to enable a creditor to obtain a preference, but the act prohibited is one which would itself accomplish or at least enter into the actual transfer or assignment of the property of the corporation.

Upon the 10th day of September, 1891, one Andrews held notes of a corporation amounting to $7,000, which were not yet due. The corporation was also owing him $3,967.19, which was due. Upon that day the treasurer of the corporation sent for Andrews and informed him that the assets of the corporation were largely in excess of the liabilities, but that the corporation had no money and would be unable to get money to meet its obligations, and would be compelled to go out of business. Both the treasurer and Andrews believed these statements to be true. The assets of the corporation were then, in fact, less than its liabilities.

The treasurer then proposed that Andrews should advance $500 to pay laborers, and surrender the unmatured notes and receive in place thereof notes of the

corporation payable on demand. To this Andrews assented, paid the $500, gave up the notes and received ten notes of $1,000 each, and one note of $967.19, each payable on demand. He then immediately proceeded to put them into eleven judgments in the Municipal Court.of the city of Rochester, the maximum jurisdiction of which in such cases was $1,000. The practical result of this transaction was that Andrews sued all his claims immediately in a court in which judgment could be rendered in six days.

*Held,* that the act of the treasurer of the corporation was not prohibited by section 48 of chapter 564 of the Laws of 1888, and that the judgments recovered by Andrews were valid.

APPEAL by the plaintiff, Porter M. French, as receiver of James Vick, seedsman, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Monroe on the 16th day of April, 1894, upon the decision of the court rendered after a trial at the Monroe Special Term.

*Joseph S. Hunn,* for the appellant.

*William B. Hale,* for the respondent.

Present — DWIGHT, P. J., LEWIS, HAIGHT and BRADLEY, JJ.

Judgment appealed from affirmed, with costs, on the opinion of YEOMAN, J., at Special Term.

The opinion of the Special Term is as follows:

YEOMAN, J.:

Upon September 17, 1891, this defendant recovered judgments against James Vick, seedsman, a business corporation of this State, located at Rochester; the same day the sheriff levied, under executions issued upon these judgments, upon the personal property of the corporation. Upon the next day this plaintiff was appointed receiver for the corporation. This action is brought to set aside these judgments. The plaintiff claims that they are made void by section 48 of the Stock Corporation Law (Laws 1890, chap. 564). The portion of this section upon which the plaintiff relies then read as follows: "No officer, director or stockholder thereof (of such corporation) shall make any transfer or assignment of its property or of any stock therein to any person in contemplation of its insolvency, and every such transfer or assignment to such officer, director or other person, or in trust for them or for their benefit, shall be void."

The following facts are claimed to bring this case within this statute: Upon the 10th day of September, 1891, this defendant held notes of the corporation amounting to $7,000, which were not yet due. The corporation was also owing him $3,967.19, which was due. Upon that day the treasurer of the corporation sent for the defendant and informed him that the assets of the corporation were largely in excess of its liabilities, but that the corporation had no money and would be unable to get money to meet its obligations, and would be compelled to go out of business. Both the treasurer and this defendant believed these statements to be true. The assets of the corporation were, in fact, then less than its liabilities. The treasurer then proposed that the defendant should advance $500 to pay laborers, and surrender these immature notes and receive notes of the corporation payable on demand. To this defendant assented, paid the $500, gave up the notes and received ten notes of $1,000 each and one note of $976.19, each payable on demand. He then immediately proceeded to put them in eleven judgments in the Municipal Court of the city of Rochester, the maximum jurisdiction of which in such cases was $1,000. These are the judgments in question. The practical result of this transaction was that the defendant sued all his claims immediately in a court in which judgment could be rendered in six days.

This statute is substantially the same as the one for which it was substituted. (1 R. S. 603, § 4.) There are two things essential in order to make it operative; there must be a transfer or assignment of property, and this must be done in contemplation of the insolvency of the corporation. Insolvency has been differently defined in different courts. By some it is said to be a condition in which the value of the assets is less than the amount of liabilities. By others it is said to be a general inability to pay obligations as they become due in the regular course of business. Many a business is at times insolvent, according to the first of these uses of the word, although it is prosperous and no one thinks for a moment that any necessity will arise for applying its property to the payment of its liabilities by process of law. There is no necessity for the law to interpose in behalf of its creditors so long as the corporation is able to meet its obligations promptly. The use of this word, in the statute under consideration, is the latter use. (*Brouwer* v. *Harbeck*, 9 N. Y. 589;

*People* v. *Excelsior Gas Light Co.*, 3 How. Pr. [N. S.] 137.) The statute is meant to apply when it becomes apparent to those assigning or transferring its property, that the corporation is in the condition described in the latter of these definitions, so that the question confronts them : How are the assets of the corporation to be used, not in carrying on its business, but in meeting its obligations ? That the corporation was insolvent, according to this use of the word, was known to both the treasurer and the defendant at the time the notes were given.

It follows, therefore, that if what was done was a transfer or assignment of the property of the corporation these judgments are void. The doctrine that the assets of an insolvent corporation are a trust fund for creditors, and that all should share ratably therein, is not the law of this State. In this State an insolvent corporation may, if not restrained by its charter or by statute, apply its assets to the payment of its creditors, so as to prefer some to others. (*Coats* v. *Donnell*, 94 N. Y. 168.) Equitable considerations based upon the principle of equality among creditors in such a case cannot, therefore, be invoked to supplement the statute under consideration. The statute must operate according to its provisions when construed in the light of the legislative intent. The act prohibited is "any transfer or assignment" of the corporate property, and to make these judgments void the acts of the treasurer must be a transfer or assignment of the property. Creditors of such corporations are not discouraged by the courts from obtaining such preferences as they may by diligence; their right to do so and the propriety of their doing so is fully recognized. The attempt by this statute was to limit the aid which the officers of the corporation might give to the same end. It is plain that this provision of the law was not intended to prohibit every act on the part of officers of such corporations which might enable or tend to enable a creditor to obtain a preference. The words are not apt words for such a purpose; they are quite limited in their application. Moneyed corporations were not subject (1 R. S. 605, § 11) to this provision of law to which business corporations were subjected. But other concurrent statutes (1 R. S. 591, §§ 8, 9) provide a similar restriction as to them, and in addition thereto, that in a like case "any payment made, judgment suffered, lien created or security given" with intent to give a prefer-.

ence to a creditor should be void. This must have been intended to restrict and control the action of such corporations to a greater extent, where preferences came in question, than business corporations were restrained or controlled under like circumstances. It is, however, equally plain that the restriction which was placed upon business corporations was, so far as it went, intended to restrict the giving of preferences by insolvent corporations. The question is, what is a transfer or assignment within the meaning of the act? In *Kingsley* v. *The First National Bank of Bath* (31 Hun, 329) it was held where judgments were obtained against an insolvent corporation upon offers of judgment made by it to enable the creditor to obtain a preference, that the judgments and executions issued upon them were void. In this case the lien was acquired by the execution. There was no real estate upon which the judgment became a lien. The opinion of the court evidently regards. the judgment and execution as together effecting a transfer of the property, and thus the corporation, by its offer of judgment, was a party to the transfer itself, and within the statute. In *Varnum* v. *Hart* (119 N. Y. 101) Judge EARL makes a suggestion (p. 107) that the judgment is only a higher form of obligation and does not, where there is no real estate, operate to transfer any property; that it is the execution that does that, as to personal property, and that where the officers of a corporation have nothing to do with the execution, they do not act within the prohibition of the statute. When he made this suggestion he was not ignorant of the decision in the *Kingsley* case, for he refers to it in the same opinion. The *Kingsley* case is not a controlling authority in the case at bar, for in this case the treasurer of the corporation took no part in any of the acts which in themselves were a transfer of the property of the corporation. It is perfectly plain that what the treasurer did was for the purpose of putting the defendant where he could sue at once and thus obtain a preference. It is one thing to make a transfer of property, and quite another thing to aid some other person to get into a position where he may, at a more remote stage of the proceedings, compel a transfer of corporate property himself. If the debt had been due, a suggestion by the officer of the corporation as to the true state of affairs would have resulted in a judgment and a preference. The giving of several small notes for a debt due, so

that actions can be brought in a court of limited jurisdiction and judgments obtained, sooner than otherwise, might aid a creditor in obtaining a preference. Many other ways might be suggested whereby officers of a corporation might be instrumental in a creditor's obtaining a preference and yet not participate at all in the actual transfer or assignment of any of the property of the corporation. If their acts are to be held to be within the provision of the statute, then the statute means that no act shall be done on the part of the corporation enabling or tending to enable the creditor to obtain a preference. It needs no argument to show the falsity of such a result. "There is no meaning of the word transfer which carries the idea of an act of extinction; or any other idea than that of the bearing over of a right or title or property in a thing from one to another." (*Sands* v. *Hill*, 55 N. Y. 22.) Where, then, is the line to which the statute reaches, but beyond which it does not go? The only one that it is practicable to establish is the one that the terms of the statute provide. The prohibited act must itself accomplish or at least enter into the actual transfer or assignment of the property. This view is sustained in the *Varnum* case. In that case a creditor was enabled to obtain a preference by judgment and execution. This was accomplished by the officer of the corporation upon whom the execution was served keeping, by agreement with the plaintiff, the fact of the pendency of the action from the knowledge of all others, including the other officers of the corporation. If this had not been done the preference would have been prevented. In that case the preference was secured by the co-operation of the officer of the corporation as much as it was in the action at bar. In the one case the time in which to procure the judgment was shortened by the officer of the corporation. In the other the interference of others interested to defeat the preference was prevented by the officer of the corporation. It follows that the judgments are valid.