JONAS P. VARNUM, Receiver, etc., Respondent, *v.* E. KIRK HART *et al.*, Appellants.

*Supreme Court, Fifth Department, General Term, June 22, 1889.*

1. *Corporations. Insolvency.*—Any arrangement made between the officers and agents of a corporation, when insolvent or in contemplation of insolvency, and various creditors, who were aware of its condition, with a view of transferring any of its property or assets, is utterly void.

2. *Same.*—Section 4, title 4, part 1, chap. 18, Revised Statutes, does not guide, regulate or prohibit creditors from resorting to the customary remedies of the law, though they have knowledge of the insolvency of the corporation.

3. *Same. Creditors.*—Where creditors of an insolvent corporation sold its assets on void judgments, under an agreement to apply the proceeds *pro rata* on their judgments, they are jointly liable for the value of the property.

4. *Same. Equity.*—The court may, in an equity action, direct the manner of enforcing the judgments, so as to secure justice among the defendants.

5. *Same. Estoppel.*—Where a receiver of the insolvent incorporation, on being appointed, converted the assets into money and advertised for claims, and the judgment creditors in question respectively presented as a claim the balance due on their several judgments, which were passed by the referee, appointed to examine the account; and where, in the order confirming the report, it was adjudged that the account of the receiver be settled, allowed and confirmed as therein stated, that he pay over the money *pro rata* to the several parties, and that he be continued in office for the purpose of bringing such further actions and proceedings, as he shall be advised, the right of the judgment creditors to retain the money realized by them on the sale of the property, was not involved or litigated in the proceedings, nor was there an adjudication upon the validity of the creditors' judgments, so as to estop the receiver from afterwards maintaining an action to recover the amount realized by the creditors from the execution sale.

6. *Same. Executions.*—Where the sale was made on both valid and invalid executions, under the agreement to share *pro rata* in the proceeds, and the valid executions are prior liens and of greater amount than the whole of the corporate property sold, the pres-

ence of the invalid executions do not render the judgment credi-- tors therein liable.

7. *Evidence. Affidavit.*—An *ex parte* affidavit of one of the defendants in an action, containing an admission of facts and circumstances material and pertinent to the issue between himself and plaintiff, is competent as against him, but not as against the other defend-- ants.

8. *Same.*—The admission of incompetent evidence, without objection or motion to strike out, is not error.

9. *Trial. Objections.*—The court may permit a witness to answer a question, against objection where the response may be competent, unless the officer's statement on request as to its nature, show its incompetency.

Appeal from a judgment entered upon the decision of the court.

The plaintiff is the receiver of the Evening Express Printing Company, a business corporation organized under the laws of the state of New York. His appointment was made in an action prosecuted by the people of the state of New York against the said corporation, for its dissolution on account of its insolvency, and he entered upon the discharge of his duties on the twelfth day of April, 1882. The appellant, Hobart F. Atkinson, was receiver of the city bank of Rochester, a banking corporation organized under the laws of the state of New York, and has now moneys in his hands undistributed, which were the property of the bank, subject to the order of this court. From the year 1878 to December, 1882, Charles E. Upton was either cashier or president, and during the years 1881 and 1882 was its president, and during all the time mentioned he was the financial manager thereof and had charge and control of the business of the bank.

In December, 1881, and for a considerable time prior thereto, the said corporation was indebted to the said bank and the appellant Hart and Elwanger, and also to Dorcas Miller. In February, 1882, the bank, Hart and Miller commenced actions on their respective demands against the

said corporation, and the 3d day of March, 1882, judgments were entered, the one in favor of the bank being $7,056.60, in favor of Hart $10,086.27, and in favor of Miller the sum of $3,130, and docketed in the Monroe county clerk's office. The summons and complaint in each of these actions were served upon C. D. Tracy, one of the directors of the corporation, at the same time, and the judgments were entered, and executions issued thereon, simultaneously to the same officer, and all the personal property, subject to levy and sale on execution, was seized, under and by virtue of these several executions. Before the sale of the property levied upon, the plaintiff was appointed, and qualified as receiver. After such appointment the property was sold for $20,000, and purchased by Hart and Elwanger. Prior to the third day of March, the said corporation was indebted to the appellant George Elwanger in the sum of $4, 206.43, and on that day he commenced an action against the said corporation, and on the fourth day of March following, the board of directors, by a resolution passed and entered in its minutes, authorized its attorney to appear in said action, and to serve a written offer allowing judgment to be taken against the company in favor of Elwanger for the amount claimed, with costs, and such offer was served and judgment entered on the same day; and in pursuance thereof an execution issued and delivered to the same officer, who held the executions on the judgments before mentioned.

At the time of the commencement of the said actions the said corporation was insolvent, and the said Tracy and the officers of the said bank, and Hart and Elwanger, well knew the fact, and they also knew that it had, for more that a year prior thereto, neglected and refused to pay its promissory notes at maturity.

The remaining assets of the corporation not levied upon by the said executions, the receiver converted into money and distributed among the creditors who presented claims against the said corporation. This action was commenced

in December, 1885, for the purpose of recovering from the defendants the amount of money realized on the sale of said property, upon the ground that the recovery of the said judgments and the sale of the property on the executions was fraudulent and void, and contrary to the provisions of section 4, title 4, chapter 18 of Revised Statutes. The trial court held as matter of law that each of the said judgments and the executions issued thereon were void, and that the same should be set aside ; and that the plaintiff, a receiver, recover of Hart, Elwanger, Miller and Hobart F. Atkinson, as receiver, the sum of $27,294.32, and judgment was rendered in pursuance thereof.

On a previous trial of this action, a judgment for the same amount, in the aggregate, was severally rendered against the same defendant. The amount of the recovery against Miller was the sum of $3,186.93, from which judgment she never appealed, and on the appeal of the other defendants, the judgment rendered against each of them, severally, was reversed and a new trial ordered.

*James Breck Perkins*, for appellant Hart ; *Joseph Hunn*, for appellant Elwanger ; *Arthur Smith*, for appellant Atkinson.

*Martin W. Cook*, for respondent.

BARKER, P. J.—The receiver who represents the creditors and stockholders of the corporation attacks the validity of the several judgments rendered in favor of the bank, Hart, Miller and Elwanger, on the ground that they are void, and a fraud upon the statute enacted for the purpose of securing equality in the distribution of the property and assets of insolvent corporations among its creditors, which declares that whenever any incorporated company shall have refused the payment of any of its notes, or other evidences of debt, in specie or lawful money of the United States, it shall not be lawful for such company, or any of

31

its officers, to assign or transfer any of the property or
choses in action of such company, to any officer or stock-
holder of such company, directly or indirectly for the pay-
ment of any debt, and it shall not be lawful to make any
transfer or assignment, in contemplation of the assignment
of such company, to any person or persons whatever, and
every such transfer and assignment to such officer, stock-
holder, or other person, or in trust for them, or their bene-
fit, shall be utterly void.　Chap. 18, part 1, sec. 4, tit. 4 of
the Revised Statutes.

The object of this statute is to prevent all intentional pref-
erences among the creditors of insolvent corporations, and to
secure an equality of distribution among its creditors.

Every agreement or arrangement made between the offi-
cers or agents of the corporation when insolvent or in con-
templation of insolvency, with a view of transferring or
assigning directly or indirectly any of its property or assets
to any of its creditors, contravenes the policy of the statute,
and is utterly void.

At the time the actions were commenced by the service
of the summons and complaint on Tracy, one of the direc-
tors of the corporation, and the general manager of its
affairs, he well knew that the company was financially
embarrassed and insolvent.　For a considerable time prior
thereto the bank and Hart were pressing the payment of
their demands, and they also knew the company was un-
able to pay its debts in full.　The trial court found that
Upton, acting as president of the bank, and Hart had con-
sultations and negotiations with Tracy, which resulted in
the arrangement or understanding that actions were to be
commenced against the company upon their several notes
and demands and that the papers should be served upon the
said Tracy as one of the directors of the company, who
should conceal the fact of such service until the time for
the corporation to answer in each of said actions had ex-
pired—so that judgments might be entered in each of said

actions without the knowledge of the other directors of the said company or any other of its creditors. The further fact is also found, that such arrangement was made so that the bank, Hart and Miller might be enabled to procure a preference over the other creditors of the corporation. The summons and a verified complaint, in each of said actions, were served on Tracy, who concealed the fact of the commencement of the actions until after judgments were entered and executions issued and levied on the personal property of the company, which was afterwards sold thereon. The evidence fairly supports these conclusions, and our examination of the evidence convinces us that the arrangement entered into between those parties was to secure a preference in payment over the other creditors of the company.

If these judgments are upheld as valid, then the plaintiffs therein have secured a priority in payment for the greater part of their respective debts to the detriment of the other creditors of the corporation. The arrangement made with Tracy for the commencement of these actions, and his agreement to conceal the fact from the other officers of the company until a lien was placed on the personal property, subject to levy and sale on execution, was manifestly made because the company was insolvent, and that they knew the fact, and that their purpose was to secure, by means of the levy, a preference in payment over the other creditors. If that was not the mind of the parties who conducted the negotiations, no sensible reason can be assigned for their action, which was exceptional as between debtors and creditors who had no ulterior purpose in view.

By obtaining the judgments, and issuing executions thereon, and the levy upon and sale of the property, a transfer of the same was made to the plaintiffs in those judgments, within the sense and meaning of the statute. Brouwer *v.* Harbeck, 9 N. Y. 589; Kingsley *v.* First Nat. Bk. of Bath, 31 Hun, 329.

484      VARNUM *v.* HART.

The intent of the statute was to enjoin the officers of an insolvent company from making a transfer or assignment of any of its assets; and if this restraint is disregarded the transfer is void, and the parties to whom the same is transferred, either directly or indirectly, acquire no title to the property. The statute does not attempt to guide or regulate the action of creditors seeking to collect or secure their debts, nor restrain them from resorting to the customary remedies of the law to enforce the payment of their debts from the corporation, although they may have knowledge of its insolvency.

The restraint of the statute is imposed upon the company and its officers, acting separately or collectively, and it is their unlawful conduct that vitiates the transfer or assignment, and makes the same utterly void. Had the pursuing creditors procured their judgments without any agreement or concert of action with Tracy, then they would be entitled to the money which they have realized by the sale of the company's property under their respective executions. But in view of their arrangement with Tracy, their judgments cannot be used as instruments to secure the payment of their debts, because they conspired with an officer of the company and induced him to violate a duty which he owed to the other creditors of the company, that they might secure a preference in the payment of their debts. It was the duty of Tracy, having charge of the affairs of the company and conscious of its insolvency, to do all in his power to carry out the policy of the statute, and to do whatever he might to place all the creditors in a condition of equality. His agreement to remain silent when it was his duty to proclaim the financial condition of the company, and the pursuit of particular creditors, was unlawful, corrupt and a betrayal of his trust, which the agent and the representative of the bank and the other parties instigated. When the suits were first commenced by service of process on Tracy, it was his first duty to notify the other directors, and if they were unable

to satisfy in some manner the impatient and pursuing creditors, so that they would delay action, then to have taken prompt measures to secure a general distribution for the benefit of all the creditors, and we are to presume that they would have done so had they been notified by Tracy that these actions had been commenced. Morawetz on Corporations, § 863.

We concur with the learned trial judge in his conclusion, that Upton acted as Hart's agent in bringing the action on his note, and they acted in concert in all the steps which were taken for the purpose of securing a prior lien on the personal property of the company, and that the illegal agreement made between Upton and Tracy, to suppress the fact that actions had been commenced, invalidates his judgment and deprives him of all advantage sought to be acquired by the levy and sale under his execution.

The appellants urge as a defence, in bar of a recovery, that the plaintiff is estopped by the previous adjudication of this court in proceedings instituted by him relative to his receivership, in which it was determined, as they claim, that their respective judgments were valid and the company's property rightfully levied upon and sold. The receiver converted the assets which came to his hands into money, and then advertised for the presentation of claims of creditors in the manner required by statute. The appellants, respectively, presented, as a claim or demand due from the company, the balance due on their judgments after crediting the sum realized on the executions. The facts upon which the claim of estoppel is based are substantially the same in the case of each appellant, and for convenience, Hart's Case, on this subject, will be examined separately, and our determination thereon will determine the question as to the other appellants. His original claim was for money loaned the company, for which he held its note dated December 1, 1876, signed by the said Tracy and others, as sureties, and upon this note the judgment was

rendered. That this was a debt for the company to pay is not disputed. In making proof of his claim, Hart presented to the receiver a copy of the docket of his judgment, certified by the county clerk, on the face of which the amount realized on the execution was credited and deducted from the amount of the judgment, to which was attached Hart's affidavit, in which he stated "that there remains due to defendant on said judgment the sum of $2,046.08, with interest thereon from April 19, 1882, no part of which has been paid, and to which there are no offsets either in law or in equity."

Afterwards the receiver gave notice that on a day named therein he would render to the court "a full and accurate account of all his proceedings," and requested the appointment of a referee to examine the same and report thereon. At the time mentioned he presented a petition to which he attached an account of the moneys collected and paid out by him, and also a list of the claims, headed, "claims presented," in which Hart's name appeared, and his claim was mentioned as a balance due on judgment, $2,046.08. In the petition reference is made to the list of creditors as "statement of the claims against the defendant, which have been presented to me and which appear to be valid, legal and just claims."

In the order of reference the referee was directed to examine and report upon the account, and to hear and examine the proofs, vouchers and documents offered for and against the same. At this time no dividend had been made by the receiver.

The referee, in his report, states that he had examined the account, and no objections were made and no evidence given in regard to the same by either party, and, in his opinion, the same should be passed as rendered by the receiver. In the order confirming the report, it is adjudged that the account of said receiver be settled, allowed and confirmed as therein stated. And it was further ordered,

that the said receiver pay over the balance of the money in his hands *pro rata* to the several parties, who have proved their claims as mentioned in the report. And it was also further ordered, " that such receiver be continued in office for the purpose of bringing such further action, or actions, and take such further steps and proceedings as he should be advised."

This statement of the proceedings had on the accounting fully presents the legal proposition, for which the appellant Hart contends, that this court did, in those proceedings, pass upon and affirm the validity of his judgment, and the receiver cannot again litigate that question. As between the receiver and Hart, the real and only question presented was, whether the amount claimed to be due Mr. Hart was just and equitable as a basis and a guide in making a distribution of the assets among all the creditors. The validity of the judgment was not in issue, and whether the same was procured by collusion and in violation of the statute, the claimant, Mr. Hart, was justly entitled to share in the distribution, on the basis that the sum due him was not less than the amount stated in his claim presented to the receiver.

In his petition to the court, the receiver simply admitted that the claim presented against the company was just and valid. The question now in issue—that is, the right of the appellant to retain and keep the money realized by him on the sale of the property—was not involved or litigated in those proceedings.

When the receiver was appointed, the property sold had been levied upon and was in the custody of the sheriff. If no execution had been issued on the judgment until after the receiver's appointment, and after he had acquired possession of the property, no occasion could have arisen for him to inquire as to the validity of the judgment, for if that had been the case, none of the creditors would have been

deprived of their just rights to share in all the assets of the company.

We see no force in the point that Hart received less on the distribution made than he would have done if he had presented a claim for the amount of the original indebtedness, for upon a distribution of the money to be collected from the defendants on the judgment in this action, the amount received on the first dividend may be taken into consideration to secure equality among the creditors.

The order confirming the referee's accounts and directing a distribution of the moneys in his hands among the several parties who had proved their claims, does not in terms hold or declare the judgment in question to be valid; nor was it necessary for the court to consider and determine whether it was void as contravening the policy of the statute. The single question for the receiver to examine and the court to determine in those proceedings was, did the company owe Mr. Hart the sum of money which he claimed; and in any view which can be taken of the case, it did. The receiver did not contend to the contrary, and no issue was joined between him and Hart on any question. The order in terms continues the receiver in office, and reserves to him the right to prosecute any other or further actions and take such further steps and proceedings as he shall be advised. This provision of the order left open for further examination every question not actually or necessarily determined by the decretal order.

We are unable to discover a state of facts upon which to base an estoppel, *in pais*, against the receiver, giving a careful consideration to the argument of the learned counsel on this point.

The relief granted to the plaintiff in this action was the cancellation of each of the judgments in controversy and setting aside the several executions issued thereon, and the recovery of a joint judgment against all the defendants for the value of the property and interest thereon, together

with the costs, which amounted to the sum of $27,721.65. Each of the appellants contend that if they are liable in damages for the seizure and sale of the property of the company, the recovery should be several and not joint and limited in amount to the sum received by each on his several judgment, or at least to the amount of his judgment.

The appellants caused execution to be issued on their judgment, with directions to the sheriff to levy upon and sell the personal property of the company. Before the sale took place, the appellants entered into a written agreement which in effect provided that the proceeds of sale should, as between themselves, be applied *pro rata* on their respective judgments on the basis of the amount of each, the same as if the executions had all been issued simultaneously to the sheriff. This concert of action between them, together with their previous individual actions, made them joint tort feasors, as all of the judgments were void. The judgments being set aside for this reason, they were jointly liable for the value of the property seized and sold. The rule is, that all who command, advise or countenance the commission of a trespass by another, or who approve of it after it is done, are liable if done for their benefit, in the same manner as if they had committed the tort with their own hand. The slightest interference with the property of another and a claim of dominion over it renders the wrong-doer liable for the commission thereof.

By their written agreement the appellants combined and agreed together that they would, by the use of void judgments, convert the plaintiff's property into money for the purpose of distributing the same among themselves.

This purpose they carried into effect. There can be on doubt but each is liable for all the damages resulting to the other creditors from the execution of their common and illegal purpose. We think, however, as this is an equitable action, the court may direct the manner of enforcing the judgment, and in the first instance require the plaintiff

to issue executions against the property of each of the defendants for the amount which each received from the avails of the property sold, and in case of failure to collect from either of the defendants the sum received by him with interest, and his just proportion of the costs, then an execution may be issued against all the defendants for the unpaid part of the judgment.

We think it would be proper for the judgment to contain a provision, requiring the receiver of the bank to pay out of any funds in his hands applicable to that purpose, the amount received by it on its judgment. Such a provision in the judgment invites no issue between the defendants, but simple provides the way and manner of collecting a judgment for which all are liable, and the same in legal effect remains a joint judgment. Code, §§ 521, 1204; Derham v. Lee, 87 N. Y. 599.

On the former trial several judgments were rendered against the defendants for the amount of money which they had received upon their respective executions. From that judgment the defendant Miller did not appeal, and that judgment as against her stands, and this judgment is also in form and against her, from which she does not appeal. Although she has assented to the form of the judgment as rendered on the trial now under review, we see no reason why we may not modify the form of the judgment as to the mode and manner of collecting the same, as it does not increase her liability under the judgment.

Exceptions were taken by the defendants to the reception of evidence offered against them, which they insist should be sustained. We have examined all of them, and have reached the conclusion that none of them were well taken, but will briefly refer to some of the most serious. The plaintiff offered in evidence, as against all of the defendants, the *ex parte* affidavits of the defendant George Elwanger, and George H. Elwanger, and Francis E. Rew, all of them purporting to have been taken in the action of The People

*v*. The Company, in which the receiver was appointed, before the commencement of the action. An objection was interposed by all of the defendants, on the ground that they were immaterial and incompetent, which was overruled and an exception taken in behalf of all the defendants.

We are of the opinion that portions of the affidavit of George Elwanger were competent as against him, as containing an admission of facts and circumstances material and pertinent to the issue joined between him and the receiver.

We are also of the opinion that this affidavit was not competent as against the other defendants, nor was either of the other affidavits competent as against any of the defendants. There is a technical answer to this exception, as it appears that a portion of the evidence offered was competent as against the defendant, George Elwanger. The three affidavits were offered together as evidence against all the defendants. The objection interposed was by all the defendants, and the exception taken was in behalf of all. If the objection in the form in which it was made had prevailed, then evidence competent for a particular purpose, as against one of the defendants, would have been excluded. Hence the rule, that when the evidence offered is competent as against one of the parties, an exception by all to the ruling of the court receiving the same is not available. Black *v*. Foster, 28 Barb. 387 ; Doyle *v*. N. Y. Eye and Ear Infirmary, 80 N. Y. 631 ; Magee *v*. Bader. 34 Id. 247.

As this case was tried by the court, the rule should be strictly adhered to, as it is fair for this court to assume that the trial court limited the use of the evidence to legitimate purposes.

An exception was also taken to an item of evidence given by the witness Rew, who was one of the trustees of the company. He had stated, without objection, that after the executions were placed in the hands of the sheriff, he and George H. Elwanger had an interview with Upton at the

bank. He was then asked by the plaintiff this question: "What was said?" To this question all of the defendants made an objection without assigning any ground upon which it was placed. The case states that the evidence was received as against the receiver and Hart, and thereupon the latter took an exception. If Upton could have said or done at that interview anything binding upon any of the defendants, then the objection was not well interposed, and the exception by Hart was unavailing. We are not able to say that Upton could not, as he was then the president of the bank and agent, and acting for Hart in the collection of his judgment. The plaintiff was not asked to state the nature and character of the answer which he expected the witness would give in response to the question, so we think the court committed no error in allowing the same to be answered. The witness did, in his answer, testify to statements and confessions made by Upton, which was clearly incompetent as against Hart. The defendant, Hart, had ample opportunity to renew an objection in his own behalf, before the witness gave the objectionable evidence, and as he failed to do so, or to move to strike out the evidence after it had been received, it is to be presumed that by his silence he was willing that it should remain in the record.

The judgment should be modified as suggested as to the mode and manner of collecting the judgment; and, as modified, affirmed, with costs of this appeal.

All concur.