JOSHUA L. BAILY et al. and JAMES TALCOTT, Respondents, *v.* LEWIS M. HORNTHAL, Appellant, Impleaded with ALBERT WEIS and ROBERT WEIS.

1. PARTNERSHIP — WITHDRAWAL OF CAPITAL.　The doctrine that a partner who retires from an insolvent firm and withdraws from it a sum of money as his share of the contributed capital is defrauding the creditors of the firm, applies with the same force to a limited as to a general partnership.

2. INSOLVENT LIMITED PARTNERSHIP — RETURN OF CAPITAL TO SPECIAL PARTNER.　If a limited partnership was insolvent at its termination, and a succeeding general partnership and the general partners have been since continually insolvent, a special partner cannot retain the capital that he had contributed to the firm, when voluntarily paid back to him by the general partners after they had become insolvent, as against judgment creditors of the general partners whose claims were in existence when the payment was made, at least in the absence of an agreement made in good faith, in ignorance of the fact of insolvency and without knowledge of such facts as would put a prudent man upon inquiry.

3. CREDITORS' ACTION.　An action in equity lies at the suit of judgment creditors, with executions returned unsatisfied, of the general partners in a terminated insolvent limited partnership, organized under the laws of Texas, and in a succeeding general partnership, to reach a specific fund in the hands of a special partner, upon the theory that he had no right to the same, as against the creditors of the judgment debtors, because he received it, under the designation of returned capital, from the debtors virtually as a gift when they were insolvent.

4. EVIDENCE OF INSOLVENCY.　The evidence examined and *held* to support the conclusion of the courts below (the facts having been found by the trial court and confirmed by a late General Term), that a limited partnership, which had been succeeded by a general partnership which failed seven months after the termination of the limited partnership, was insolvent at its termination.

5. APPEAL — GENERAL EXCEPTION.　Upon an appeal to the Court of Appeals, a general exception to the findings, taken after the close of the trial, when there was no opportunity to meet the point by amendment or otherwise, cannot be relied upon to raise any question which, if properly raised during the trial, might have been successfully met and answered.

6. EQUITY — PERSONAL MONEY JUDGMENT.　A court of equity may adapt its relief to the exigencies of the case, and, when nothing more is required, may order a sum of money to be paid to the plaintiff, or give him a personal judgment therefor, to be enforced by execution.

*Baily* v. *Hornthal*, 89 Hun, 514, affirmed.

(Argued December 9, 1897; decided January 11, 1898.)

Appeal from a judgment of the General Term of the Supreme Court in the first judicial department, entered October 23, 1895, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

From the 1st of May, 1886, to the 30th of April, 1891, the defendants composed a limited partnership, organized under the firm name of " Weis Brothers," pursuant to the laws of the state of Texas, with Albert and Robert Weis, of Galveston, in that state, as general partners, and Lewis M. Hornthal, of the city of New York, as special partner, the contribution of the latter to the capital being $50,000. This partnership was several times renewed, the date of the last renewal being April 12th, 1890, and the duration thereof, as then fixed by the articles, was to be from the 30th of April, 1890, until the 30th of April, 1891. It was not renewed after the date last named, but, without any agreement upon the subject, the general partners retained the assets and continued the business at the same place in Galveston, under the old firm name. On the 5th of November, 1891, the new firm failed owing over $700,000, of which $315,208.51 was unsecured, while the only assets to meet it were cash and accounts estimated at the time as worth the sum of $166,404.23. The apparent deficit amounted to about $150,000, and the evidence tended to show an actual deficit of over $200,000. On the 23rd of May, 1891, Albert and Robert Weis paid, by an indirect method not necessary to describe, to the defendant Hornthal, $25,000 on account of his contribution of $50,000 to the capital of the limited partnership. At the time of the failure, in November following, Hornthal was preferred in a trust deed executed by Albert and Robert Weis to one Lewy, for the benefit of certain creditors, for the remainder of his capital contribution, amounting, with interest, to $26,433.34. About a year after the failure he received from the trustee the amount thus preferred by the trust deed, making, with interest, $27,243.95, at the date of payment, which was prior to the commencement of this action. The trustee has closed his trust by disposing of all the

82

property transferred to him and applying the proceeds, less expenses, upon the debts or claims preferred.

The claim of the plaintiffs Baily arose mainly upon a contract made on the 13th of April, 1891, by Robert Weis, in the name of the special partnership, for goods to be delivered to that firm, a small part at once and the rest in May, June and July following. Under this contract goods to the amount of $499.80 were delivered to the limited partnership before it expired, and the rest were delivered, including a second order given in June, 1891, some months after it had expired, to Albert and Robert Weis, who were doing business under the firm name of the Weis Brothers, as aforesaid.

The claim of the plaintiff Talcott was under a contract made March 13, 1891, whereby the purchasing agent of the limited partnership ordered of him, in the name of the firm, goods to the amount of $742.08, to be delivered in May, June and July following, and which were delivered accordingly to Albert and Robert Weis, under their said firm name. By the terms of both of these contracts the goods were not to be paid for until after the first of October, but there was no option to either party to cancel the order.

The statutes of the state of Texas relating to limited partnerships and fraudulent conveyances were read in evidence upon the trial, and they are the same in substance as the statutes of our own state relating to those subjects. By article 3457 of the statutes of that state it is provided that "If it shall appear that by the payment of interest or profits to any special partner the original capital has been reduced, the partner receiving the same shall be bound to restore the amount necessary to make good his share of the capital, with interest;" and by article 3463 that "In case of the insolvency or bankruptcy of the partnership, no special partner shall, under any circumstances, be allowed to claim as creditor until the claims of all other creditors of the partnership shall be satisfied." (Act of May 12, 1846; P. D. 4732, 4739.) By article 2465, relating to fraudulent conveyances, it is provided that "Every gift, conveyance, assignment or transfer of, or charge

upon, any estate, real or personal, every suit commenced, or decree, judgment or execution suffered or obtained, and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of, or from what they are, or may be lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void."

Upon the trial at Special Term the foregoing facts with many others appeared, and the justice presiding decided in favor of the plaintiffs. The decision was general in form, but stated as the grounds thereof, "That on and prior to April 30, 1891, the date of the termination of the special partnership of Weis Brothers, and at all times since said special partnership, the succeeding general partnership of Weis Brothers and Albert Weis and Robert Weis were and are largely insolvent; that on and prior to the said April 30th, 1891, the special capital of defendant Hornthal in said special partnership was wholly exhausted; that the payments to him of his special capital and interest amounting to more than $50,000, were not for value or in satisfaction of any valid claim, but were entirely voluntary; that these payments were made in violation of the statutory prohibition against withdrawals by and preference of special partners and transfers made in contemplation of insolvency, or with intent to hinder, delay and defraud creditors; that said payments were and are fraudulent and void alike as against creditors of said special partnership of Weis Brothers, and also against creditors of the succeeding general partnership of Weis Brothers, and against creditors of Albert Weis and Robert Weis, including these plaintiffs; that it is immaterial whether the plaintiffs are creditors of the special partnership, or of the said general partnership, and that defendant Hornthal is liable to plaintiffs to the amount of their claims, with interest, for the moneys so paid to him." Judgment was directed accordingly, which, upon appeal taken by the defendant Hornthal, only, to the General Term, was affirmed by a divided vote, and from the judgment of affirmance Mr. Hornthal has appealed to this court.

*George Hoadly* and *F. P. Delafield* for appellant. A limited partnership is one, of the beginning and end of which knowledge is given to the whole world by publication according to law, and when the copartnership has ended, the authority to bind the special partner ends, and during the term of the copartnership, it is not within the scope of the authority of the general partners as agents to bind the special partner by agreements to be performed after both their and his connection with the firm must, according to its published terms, have ceased, or to be performed by or to others than the members of the limited partnership as such. (Benj. on Sales, §§ 3, 308, 352; *Stephens* v. *Santee*, 49 N. Y. 35; *Cornell* v. *Clark*, 104 N. Y. 451; *Pinder* v. *Wilks*, 1 Marshall, 248; *Pusey* v. *Dusenbury*, 75 Penn. St. 437; *Union Nat. Bank* v. *Underhill*, 102 N. Y. 336; *Pinckney* v. *Keyler*, 4 E. D. Smith, 469.) Hornthal is not liable to creditors of the subsequent general partnership of Weis Brothers. (*Miller* v. *Miller*, 23 Me. 22; *Reed* v. *Woodman*, 4 Me. 400; *Usher* v. *Hazeltine*, 5 Me. 471; *Quimby* v. *Dill*, 40 Me. 528; *Moritz* v. *Hoffman*, 35 Ill. 553; *Baker* v. *Gilman*, 52 Barb. 26; *Jackson* v. *Post*, 15 Wend. 588; *Phillips* v. *Wooster*, 36 N. Y. 412; *Dunlap* v. *Hawkins*, 59 N. Y. 342; *Carr* v. *Breese*, 81 N. Y. 584.) Hornthal's capital was not withdrawn during the limited partnership. (*Hogg* v. *Orgill*, 34 Penn. St. 344; *Lachaise* v. *Marks*, 4 E. D. Smith, 610; *Mattison* v. *Demarest*, 4 Robt. 161; *Harris* v. *Murray*, 28 N. Y. 577.) The limited partnership was not insolvent when dissolved. (*Jones* v. *U. R. Co.*, 18 App. Div. 267; *Emmerich* v. *Hefferan*, 26 J. & S. 217; *Townsend* v. *Westacott*, 2 Beav. 340; *Mackay* v. *Douglas*, L. R. [14 Eq. 106]; *Crossley* v. *Elworthy*, L. R. [12 Eq. 458]; *Carlisle* v. *Rich*, 8 N. H. 44; *Wallace* v. *Hull*, 28 Ga. 68; *Coghill* v. *Boring*, 15 Cal. 213; *Safford* v. *Grout*, 120 Mass. 20; *Walrod* v. *Ball*, 9 Barb. 271.) Personal judgment against Hornthal was erroneous. (*Innes* v. *Lansing*, 7 Paige, 583.)

*Charles E. Hughes* and *Arthur C. Rounds* for respondents. The payments to Hornthal were fraudulent as against the

creditors of Albert Weis and Robert Weis. (*Knapp* v. *Simon*, 96 N. Y. 292; *F. L. & T. Co.* v. *H. R. R. Co.*, 152 N. Y. 254; *Reeder* v. *Sayre*, 70 N. Y. 180; Baylies on New Trials, 166; *Murtha* v. *Curley*, 90 N. Y. 372; *Amherst College* v. *Ritch*, 151 N. Y. 321.) The limited partnership was insolvent on April 30, 1891, the date of its dissolution, and the judgment debtors were continuously insolvent from that time until their failure in the following November. (*Thompson* v. *Thompson*, 4 Cush. 127; *Toof* v. *Martin*, 13 Wall. 40; *Buchanan* v. *Smith*, 16 Wall. 277; *Riper* v. *Van Poppenhausen*, 43 N. Y. 68; *Herrick* v. *Borst*, 4 Hill, 652; *Menagh* v. *Whitwell*, 52 N. Y. 146; *Taylor* v. *Coenen*, L. R. [1 Ch. Div.] 636; *Churchill* v. *Wells*, 7 Coldw. 365; *Paulk* v. *Cook*, 39 Conn. 566.) The payments to Hornthal were not in satisfaction of any valid claim, but were entirely voluntary. (*Harris* v. *Murray*, 28 N. Y. 574; *Coleman* v. *Burr*, 93 N. Y. 17; *Peyser* v. *Myers*, 135 N. Y. 604; *Darby* v. *Gilligan*, 33 W. Va. 249; *Menagh* v. *Whitwell*, 52 N. Y. 161; *Innes* v. *Lansing*, 7 Paige, 583; *Van Alstyne* v. *Cook*, 25 N. Y. 489; *Hardt* v. *Levy*, 72 Hun, 225; *Todd* v. *Nelson*, 109 N. Y. 327; *Paulk* v. *Cooke*, 39 Conn. 566.) Plaintiffs, as creditors of the limited partnership, are entitled to recover against Hornthal to the extent of the indebtedness contracted before April 30, 1891. (*Bell* v. *Merrifield*, 28 Hun, 219; *King* v. *Sarria*, 7 Hun, 167; 69 N. Y. 24; *Lawrence* v. *Batcheller*, 131 Mass. 504; *Leonard* v. *C. S. N. Co.*, 84 N. Y. 48; *Dennick* v. *Railroad Co.*, 103 U. S. 11; *Kennedy* v. *Porter*, 109 N. Y. 552; *Briggs* v. *Briggs*, 15 N. Y. 471; *Merrill* v. *Blanchard*, 7 App. Div. 167; *Whiting* v. *Farrand*, 1 Conn. 60; *Mason* v. *Tiffany*, 45 Ill. 392.)

VANN, J. This is a creditors' action wherein the plaintiffs, as judgment creditors of Albert and Robert Weis, with executions returned unsatisfied, seek to reach a specific fund in the hands of the defendant Hornthal upon the theory that he has no right to the same, as against the creditors of said judgment debtors, because he received it from them virtually as a gift when they were insolvent.

While some of the allegations of the complaint are adapted to an action at law to charge Mr. Hornthal as a general partner, the action was tried and decided as an action in equity, in the nature of an ordinary creditor's bill, to reach assets of Albert and Robert Weis, transferred to said Hornthal in fraud of their creditors. The relief demanded, the evidence admitted without objection, the statements made by both court and counsel during the trial, as well as the decision and judgment, all show that this was the theory of the action as accepted by all who took part in the trial. Thus, after various judgment rolls and executions had been read in evidence, but before any oral evidence was received, and as the plaintiff was about to read a deposition taken by stipulation, the defendants' counsel remarked that " so far as there is an attempt by this testimony to establish that class of irregularities, which, according to the statutes of Texas, would make Mr. Hornthal a general partner, there can be no recovery under this complaint; but if the gentleman confines his case to his statement made in opening, that he simply claims that Mr. Hornthal received $50,000 which he ought not to have received, then there is no well-founded objection to this testimony, or any part of it." Immediately after this statement the trial judge said : " This is a creditor's action to reach a specific fund," and both parties apparently acquiesced in this declaration by the court as to the theory of the action. At no time during the trial was the position thus taken changed by the counsel for either party, and the opinions, both of the Special and General Term, show that this was the view that they took of the nature of the action. We shall confine our review to the theory, adopted by the parties and the courts below, that the action was in equity to reach assets fraudulently transferred by insolvent debtors, because, as we have frequently held, it is the duty of the trial court, in the absence of objections to evidence or to the sufficiency of the complaint, to give the plaintiff the benefit of any cause of action established by the evidence. (*Knapp* v. *Simon*, 96 N. Y. 284, 292 ; *Frear* v. *Sweet*, 118 N. Y. 454, 458 ; *Sterrett* v. *Third National Bank*

*of Buffalo*, 122 N. Y. 659, 662.) The record before us shows no exception taken by the defendant to any ruling of the trial judge relating to the admission or exclusion of evidence. There was no motion for a nonsuit or to dismiss the complaint, and no question was raised by answer, demurrer or otherwise as to a defect of parties, plaintiff or defendant. The only exceptions that we find in the record are those taken to the written decision of the trial judge upon which the judgment in question was entered. It is unnecessary, therefore, for us to decide whether a contract, made by one of the general partners, in the name of a limited partnership, without the knowledge or authority of the special partner, for goods to be delivered to such partnership after the date fixed by the articles for its expiration, is binding upon the special partner. The question that now confronts us is whether the limited partnership was insolvent when it expired, and, if so, whether the special partner, in the absence of any agreement upon the subject, can retain the capital that he had contributed to the firm, when paid to him by the general partners after they had become insolvent, as against creditors whose claims were in existence when the payment was made. Whether the debts upon which the plaintiffs recovered judgment were contracted in April, 1891, when the goods, with an unimportant exception, were actually ordered, but under such circumstances as are claimed not to bind the special partner, or in the summer following, when the goods were actually received by the general partners, under such circumstances as to raise an implied promise on their part to pay for them, is not important on this appeal, for, even upon the latter basis, both debts were in existence when the trust deed was given, which resulted in the payment to the appellant of $27,343.95 in behalf of the judgment debtors before this action was commenced.

The trial court found that the limited partnership was insolvent when it terminated on the thirtieth of April, 1891, and that since that date the succeeding general partnership, as well as the general partners, have continuously been

insolvent. If this is true, the capital of the special partner was exhausted and the general partners had no right to pay him and he had no right to receive from them anything on account thereof, at least in the absence of an agreement made in good faith, in ignorance of the fact of insolvency and without knowledge of such facts as would put a prudent man upon inquiry.

As is well said by Mr. Lindley in his work on Partnership, " The present share of a partner in an insolvent firm is obviously less than nothing, whatever may be the amount of the capital brought in by him. Consequently a partner who retires from an insolvent firm and withdraws from it a sum of money which he is pleased to call his share, is defrauding the creditors of the firm." (Lindley on Partnership, *573.) This applies with the same force to a limited as to a general partnership, for, necessarily, the capital of either kind of associa·tion is consumed when the assets are less than the liabilities. The contribution of the special partner is at the risk of the business the same as that of the general partners, and when both are lost by insolvency there is no foundation for a claim of restoration by either. There is no evidence of any express agreement as to the disposition of assets after the dissolution, and the good faith of any implied agreement is negatived by the finding of the trial judge to the effect that the payments made by the general partners to the special partner " were not for value or in satisfaction of any valid claim, but were entirely voluntary;" that they were made "with intent to hinder, delay and defraud creditors," and that they were fraudulent as against the creditors of the general partners. As the facts found by the trial court have been confirmed by the General Term, although apparently after some hesitation, we can only look into the evidence to see whether there was any to support the conclusion of the courts below. ( *White* v. *Benjamin*, 150 N. Y. 258.)

As bearing on the question of insolvency, which is of controlling importance, we have the fact that six months after the dissolution of the special partnership, the general partners,

who continued the same business with the same assets, failed, owing over $700,000, of which more than $314,000 was unsecured, and, as stated by Mr. Hornthal in his evidence, " the amount which could be depended on to settle with the creditors who were not secured by the trust deed was $166,000, and the amount that that $166,000 had to meet was $314,000 and more." Thus an admitted deficiency of about $150,000 arose within a comparatively short time after the dissolution, and yet no very heavy losses were sustained in the meantime. The volume of the yearly business did not exceed $800,000, which would make $400,000 for the six months in question, so that the deficiency, as conceded, amounted to thirty-seven per cent of the gross amount of business done. To this admitted deficiency the inference was permissible that certain additions should be made, because the accounts classified as good, in reaching the deficiency of $150,000, proved uncollectible to the extent of nearly $60,000, and there was $30,000 left unpaid upon the claims secured by the trust deed when the trust was closed. While there is no presumption that the firm was insolvent in April because its successor failed in November, the difference between the assets and liabilities at the latter date was so overwhelmingly large as to require explanation, but no satisfactory explanation was given. Evidence was furnished tending to show a net loss of $32,000 during the intervening period, and the drawings of the copartners for the year were between $20,000 and $30,000, of which not more than one-half can fairly be assigned to the last six months. No sudden or unusual depreciation in the value of merchandise was shown. The stock on hand brought seventy cents on the dollar when sold by the trustee, but there was more sacrifice in disposing of some of the other assets. Doubtless there was an accumulation of old and unsalable stock, the same as there had been an accumulation of stale and uncollectible accounts, but this was the result of the business of years, not of the last six months. One of the general partners testified that " the only cause for the failure, the substantial cause I would give, would be losses of bad accounts running a number of years

back." Mr. Hornthal, when shown a letter written by him on the 2d of December, 1891, to certain creditors for the purpose of obtaining a settlement for the Weis Brothers, in which he included, among other assets, some bills receivable amounting to $387,386.84, testified that "a very small amount, probably not over $1,000 or $2,000," was collected out of this large sum. Albert Weis stated the cause of the failure to be "heavy losses in business which were sustained. Bills of goods were sold we did not get any money for. We did an extensive credit business and did not collect. Those losses were two or three years before our failure." He thought "perhaps about one-third" 'of the bad debts accrued during the last year, but stated that some of the accounts began a good many years ago and were in judgment. On cross-examination he said that "there was no considerable shrinkage in the value of our outstanding notes and accounts from the 30th of April, 1891, to the date of our failure," and on the redirect, that he was "almost certain that our indebtedness was larger in 1890 than it was in 1891." Both the limited partnership and the general partnership that succeeded it had large accommodations from the banks. Old notes were taken up by new discounts and there was a shifting of creditors through the purchase of new goods, and the use of the proceeds to pay old debts. Thus, one of the general partners testified: "We did not pay up one set of spring purchases before the fall purchases began to come in. They always lap. We never get out of debt. Our accommodations at the bank ran right along the same way, lapped over all the time. We discount and rediscount as we need the money right along." Their credit was good all the time, but credit, which enables one to contract debts, should not be confounded with solvency, which enables one to pay debts. The ability to run in debt is not the same as the ability to pay up, nor will it relieve either firm from the imputation of insolvency to say that, as soon as the failure took place, it was followed by the failure of some of their debtors, and the refusal to pay by others, who had kept on paying as long as they could obtain more goods on credit. Nothing appears in

the evidence to show that this would not have happened if the affairs of the limited partnership had been closed in the usual way at the date of dissolution. The fact that the practical value of assets may depend, to some extent, upon the continuance in business by the owner, has no application to this case, for the limited partnership did not continue in business, but ceased to exist on the last day of April, 1891. A concern is not solvent unless it has property enough to pay its debts. An account that depends for collection upon the volition of the debtor, and his hope of further advantage, cannot be counted as an available asset, for, when liquidation comes, those accounts prove uncollectible. The nominal value of unsalable goods and uncollectible accounts has little to do with actual solvency, which depends upon the amount that can be realized from the assets, when converted into money without unreasonable haste or sacrifice, as compared with the amount of liabilities. While the evidence did not compel, it permitted, the conclusion that if the affairs of the limited partnership had been wound up at the date of dissolution by any reasonable process of liquidation, there would not have been assets sufficient to meet the liabilities. One of the general partners had no private property, and the other had no more than enough to pay his personal debts. The controlling fact of insolvency, as applied to the old firm and the new, as well as to the general partners, for the insolvency of the firm involved them personally, having been found by the courts below upon sufficient evidence, must be accepted by us as final for the purpose of this review. The payments to Mr. Hornthal, therefore, were not in satisfaction of a valid claim, but were in the nature of a gift, although nominally a restoration of capital. He was not entitled to the return of his contribution to the capital in any event, for the articles are silent upon the subject, but only in case the firm was solvent and there was a surplus after the payment of debts. After the dissolution there was no accounting and no balance struck, but matters were left in the same unsettled condition as before, so that he had no enforceable claim for the return of

his special capital either against the new firm or the general partners. Passing by the first payment to him of $25,000, made in May, 1891, owing to the question whether the claims of the plaintiffs were then in existence, we think they were entitled to reach the payment made under the trust deed, which was more than enough to satisfy their judgments. There can be no doubt that the indebtedness to the plaintiffs had then arisen and the judgment debtors owed Hornthal nothing when they gave him security for $26,433.34, all of which, with interest, was subsequently paid to him. He had no right to receive it and took no title thereto as against creditors in the situation of the plaintiffs, who are armed with judgments recovered and executions returned unsatisfied. (*Bell* v. *Merrifield*, 109 N. Y. 202.)

The point now made, that the unpaid creditors under the trust deed, which was not a general assignment or for the benefit of creditors generally, are entitled to the fund in preference to judgment creditors, was not raised either by the pleadings or by an exception to any ruling made during the trial. *Non constat*, if it had been thus raised, it would either have been answered by proper evidence, or the complaint would have been amended and other parties brought in if necessary. The plaintiffs were entitled to such a judgment as the pleadings and the evidence warranted, without regard to the possible rights of third parties, that were not brought to the attention of the trial court and are the subject of no exception taken while the trial was in progress. Upon an appeal from a judgment in a civil action, the Court of Appeals can decide no question, except one not now important, unless it is raised by demurrer, or is founded on an exception taken in due time. A general exception to the findings, taken after the close of the trial, when there was no opportunity to meet the point by amendment or otherwise, cannot be relied upon to raise any question which, if properly raised during the trial, might have then been successfully met and answered.

A personal judgment against Mr. Hornthal was proper, for a court of equity may adapt its relief to the exigencies of the

case, and, when nothing more is required, may order a sum of money to be paid to the plaintiff, or give him a personal judgment therefor, to be enforced by execution. (*Murtha* v. *Curley*, 90 N. Y. 372.) The form of judgment does not determine the nature of the action. In this case the judgment is in the form of one rendered in an action at law, yet the plaintiffs could not have prevailed without first showing that they had exhausted all their remedies at law. Having a judgment against the Messrs. Weis only, they could not issue an execution against Mr. Hornthal without first obtaining a decree of a court of equity that the latter had money in his hands which equitably belonged to the creditors of the former. As no property was to be sold, no receiver was needed, and, under the circumstances, a money judgment was precisely the relief that a court of equity should have rendered.

The judgment should be affirmed, with costs.

All concur, except O'BRIEN and HAIGHT, JJ., who dissent.

Judgment affirmed.