[No. 1039.    March 3, 1904.]

# GRUNSFELD BROTHERS, Appellees,    v.    D.    R. BROWNELL et al., Appellants.

### SYLLABUS.

1. An allegation in a complaint that the defendant "is insolvent," when the complaint is demurred to, is equivalent to saying that such defendant does not own property enough to pay his debts.

2. A plaintiff does not have to reduce his debt to judgment before he can go a into court of equity to attack and set aside a fraudulent conveyance made by his debtor. Affirming Early Times Distillery Co. v. Zeiger, 9 N. M. 31.

3. Section 67, Session Laws of 1889, which is entitled, "An act to prevent debtors in contemplation of insolvency from preferring one or more creditors to the exclusion in whole or in part of others," is not a bankruptcy law, and was not suspended by the enactment of the national bankruptcy law, so far as proceeding under it to set aside any alleged fraudulent conveyance made prior to July 1, 1898, that being the day when the national bankruptcy law was passed by congress.

Appeal from the district court of Bernalillo county, before BENJAMIN S. BAKER, Associate Justice. Affirmed.

S. B. GILLETT for appellants.

The demurrer to the bill should have been sustained, because it appeared therefrom that the complainants had a legal remedy.

> Albright v. T. S. & R., R. R. Co., 8 N. Mex. 422; Stanton v. Catron, 8 N. Mex. 365; Laswell v. Kitt, 70 Pac. (N. M.) 561; Scott v. Carlestein Co., 76 Fed. 86; Oelrichs et al. v. Spain, 15 Wall 228; 11 Enc. Pl. & Pr., 460 and citations.

The law does not deprive one of the right to sell his property to pay his debts.

Slessinger v. Topkis, 40 Atl. 717; Ontario Bank v. Hurst, 103 Fed. 231; Bump. on Fradulent Conveyances, secs. 187, 188.

The bill did not state the amount of Brownell's debts. This was a necessary allegation.

Compiled Laws 1897, sec. 2820.

The national Bankruptcy Act, supersedes all State insolvency laws from the date of its passage.

Parmenter Mfg. Co. v. Hamilton, 51 N. E. (Mass.) 529.

The present United States Bankruptcy Act became operative July 1, 1898.

First Nat. Bank of Guilford v. Ware, 50 Atl. (Me.) 24; In re Bruss-Ritter Company, 90 Fed. 651; In re John A. Ethridge Furniture Co., 92 Fed. 329; In re Macon Sash, Door and Lumber Co., 112 Fed. 323; Griswold v. Pratt, 9 Metc. 16.

B. F. ADAMS and FRANK W. CLANCY for appellees.

The demurrer to the bill was properly overruled.

Early Times Co. v. Zeiger, 9 N. M. 31.

Vague and indefinite assignments of error raise nothing for the consideration of the Appellate Court.

Lucas v. Brooks, 18 Wall. 456; Stevens v. Gladding, 19 How. 65; Ins. Co. v. Sea, 21 Wall. 161; Teoga R. Co. v. B. & C. R. Co., 20 Wall. 144; Schofield v. Territory, 9 N. M. 531, 534.

Knowledge on the part of the creditor preferred, as to the debtors intent in making the preference, is not necessary to support this proceeding.

Peckham v. Burrows, 19 Fed. Cas. 89:

Unless the debt of the creditor preferred is a bona fide debt, the preference is not within the Statute.

Millet v. Pottinger, 4 Metc. 213.

A uniform system of bankruptcy under a law of the

United States in force, must of necessity suspend state laws, because they would be repugnant.

> Ex parte Eames, 8 Fed. Cas. 237; May v. Breed, 7 Cush. 40.

The States have power within their own territory over such cases as the laws of the Union do not reach.

> Sturges v. Croninshield, 4 Wheat. 195; Geery's Appeal, 43 Conn. 299, et seq.

As to the time when the national bankruptcy law took effect:

> Hutchins v. Taylor, 5 Law Reporter 289 and 293; Swan v. Littlefield, 4 Cush. 474; In re Tebbetts, 5 Law Reporter 267; Chapman v. Forsythe, 2 How. 207, 208; Judd v. Ives, 4 Metc. 401; See also, Ex parte Eames, 2 Story 325; In re Holmes, 5 Law Reporter 361; In re Horton, ib. 462; Larrabee v. Talbott, 5 Gil. 426; Day v. Bardwell, 97 Mass. 250, 251, 254, 255; Martin v. Berry, 37 Cal. 214; Chamberlain v. Perkins, 51 N. H. 340.

State laws will remain operative in all cases which are not within the provisions of the bankruptcy act.

> Herron Co. v. Court, 136 Cal. 283; Harbaugh v. Costello, 184 Ill. 112.

### STATEMENT OF FACTS.

The appellees in this case were engaged in business in the city of Albuquerque, in this Territory, under the firm name of Grunsfeld Brothers. The appellant, D. R. Brownell, resided in the southern part of this Territory, and on the fifth day of July, 1898, was indebted to the appellees in the sum of upwards of $1,700. On January 29, 1898, appellee Brownell, being indebted to one Robert Brownell, of Nova Scotia, one of the appellants herein, executed a bill of sale by which he conveyed to said Robert Brownell, all his right, title and interest in and to a herd of about twelve hundred Angora goats,

which goats were subject to a chattel mortgage to one
C. P. Bailey, of San Jose, California, in the sum of
$1,452. Bailey who was one of the defendants in this
suit afterwards filed a disclaimer in which he sets up
that he had no interest in the goats, having sold the
mortgage held by him on them to one Howard previous
to the bringing of this suit. The record discloses that
on the third day of February, 1898, D. R. Brownell, was
the owner of a certain stock of goods, wares and mer-
chandise, of the value of several thousand dollars, and
that on said day, he sold and delivered to one of the
appellants, Gillett and Son, all of said goods, wares and
merchandise, in payment of the whole or a part of a
prior indebtedness due by him to said Gillett and Son.
The complaint alleges that each of the above transfers
were made by D. R. Brownell in contemplation of in-
solvency, and with the design to prefer the several par-
ties to whom they were made. The complaint further
alleges that the defendant, D. R. Brownell, is insolvent,
and asks that an injunction issue restraining D. R.
Brownell from transferring or assigning any other prop-
erty which he might have in the Territory of New Mex-
ico; that a receiver be appointed to take charge of all
of the property of said D. R. Brownell, except such as
is exempt from execution, and that the court decree that
the several transfers mentioned above, were made by
D. R. Brownell in contemplation of insolvency, and with
the design to prefer one or more of his creditors, and
that they be compelled to surrender to the said receiver
the property and effects of said D. R. Brownell, so trans-
ferred and conveyed to them by the said D. R. Brownell,
the same to be held by the said receiver to await the
further order of the court. The injunction issued as
prayed for in the complaint.

The defendants, Gillett and Son, and D. R. Brown-
ell, filed separate demurrers to the bill of complaint,
which were overruled, and they then filed separate an-

swers, which they afterwards asked to withdraw, which motion does not appear to have been granted, and they and Robert Brownell filed motions to dismiss, on the ground that the district court had no jurisdiction, because the Territorial law, under which the action was brought, was suspended by the national bankruptcy act of July 1, 1898. These several motions to dismiss were heard and overruled, and the defendant Robert Brownell then filed an answer. Proofs were taken, and on August 13, 1903, a final decree was entered sustaining the bill of complaint as to the transfer of the goods, wares and merchandise to Gillett and Son; declaring that such sale and transfer was made by D. R. Brownell in contemplation of insolvency, and with the design to prefer the said Gillett and Son, to the exclusion in whole or in part of said Grunsfeld Brothers, and the other creditors of said D. R. Brownell, and that the sale to Gillett and Son operated as an assignment and transfer of all the property and effects of D. R. Brownell and inures to the benefit of all his creditors in proportion to the amount of their respective demands. Samuel Neustadt was appointed receiver and ordered to take possession of all of the property of said D. R. Brownell, and Gillett and Son were ordered to deliver to said receiver all property and effects of said D. R. Brownell in their possession or under their control, etc.

Exceptions were duly saved to the overruling of the demurrers, motions to dismiss, and to the final decree, and an appeal was duly prayed and taken to the Supreme Court of this Territory.

OPINION OF COURT.

MILLS, C. J.—The complaint in this case was filed on July 25, 1898, and was brought under chapter 67, Session Laws of 1889, which is entitled "An act to prevent debtors in contemplation of insolvency from preferring one or more creditors to the exclusion in whole

or in part of others." This law has been compiled as sections 2818 to 2826, inclusive, of the Compiled Laws of 1897.

The principal grounds set up in the several demurrers are that the complaint does not allege (1), that the defendant D. R. Brownell is not possessed of and ·does not own property enough to satisfy plaintiff's claim, and (2), because plaintiffs are not judgment creditors of the defendant D. R. Brownell.

The eighth section of the complaint alleges "that the defendant D. R. Brownell is insolvent," and it seems to us that this is an allegation that he (Brownell) did not own property enough to pay his debts. The term "insolvency" as used in bankruptcy and insolvency laws, means the inability of a person to pay his debts as they mature in the ordinary course of business; but as used in a general sense, it means a substantial excess of a person's liabilities over the fair cash value of his property. 5 Cyc. 237, note 1. It is true that the answer of D. R. Brownell denies that he is insolvent, but the answer was not filed until after the demurrer was disposed of, and it is a well-settled principle of law that a demurrer to any pleading admits everything contained in it to be true that is well pleaded.

The other objections that the plaintiffs are not judgment creditors of the defendant D. R. Brownell, has been passed upon by this court in an able and exhaustive opinion written by the late Judge Hamilton in the year 1897. In that case the ground of attack made upon the bill of complaint, which sought to set aside a conveyance of property, was that the complainants were simply general and not judgment creditors, and that a general creditor will not be heard in a court of equity to attack and set aside a fraudulent conveyance made by his debtor until he has first obtained a judgment. But our Supreme Court held otherwise, and although the demurrer interposed in the lower court

which raised this question had been sustained, this court reversed that judgment and remanded the case with directions to the court below to overrule the demurrer. Early Times Distillery Co. v. Zeigar, 9 N. M. 31. There was no error in the overruling of this demurrer by the district court.

We come now to consider the most serious question which the appellants raise, and which is that the enactment of the bankruptcy act of 1898, by the Congress of the United States, suspends all State or territorial insolvency laws, and that this proceeding having been instituted on July 25, 1898, ought to have no standing in court, because the bankruptcy law was enacted on July 1, 1898.

The power is undoubtedly vested in Congress to enact national bankruptcy laws, and is given by section 8 of article 1, of the Constitution, which provides that "Congress shall have power . . . to establish . . . uniform laws on the subject of bankruptcies throughout the United States."

No State legislature can establish bankruptcy laws which are binding in the other States of the Union, but they can and frequently do pass laws relating to insolvency proceedings in their several jurisdictions .

As stated by Chief Justice Marshall in Sturges v. Crowninshield, 4 Wheaton 122, it is exceedingly difficult to distinguish with any accuracy between insolvent and bankruptcy laws as a bankrupt law may contain those regulations which are generally found in insolvent laws; and insolvent laws may contain those which are common to bankrupt laws.

The best definition which we have been able to find of a bankrupt law, is in 5 Cyc. 237, which is, "A bankrupt law, in modern legal significance means a statutory system under which an insolvent debtor may either on his own petition or that of his creditors be adjudged bankrupt by a court of competent jurisdiction, which

thereupon takes possession of his property, distributes it equally among his creditors, and discharges the bankrupt and his after-acquired property from debts existing at the initiation of the bankruptcy proceedings."

The statutes of this Territory on which this suit is based are not in the nature of an act of bankruptcy. It is only what its heading in the original act discloses it to be, which heading is quoted at the beginning of this opinion. The act does not release any debtor or his after-acquired property from his debts, but only seeks to prevent preferences being given to some creditors to the exclusion of others.

It is an undoubted fact that when Congress has passed a bankruptcy law, the insolvent laws of the several States and Territories, which are in conflict with it, are suspended, whenever the national bankruptcy law is invoked. The reason for this is that in many cases they can not go on together without collision, and whenever there might be such collision the bankruptcy act is paramount and the State and Territorial laws are suspended.

No one can contend that the passage of a bankruptcy act by Congress would render void a general common law deed of assignment made by a debtor conveying all of his property for the benefit of his creditors ratably according to their claims, but not providing for the release of the debtor. It would be perfectly valid as to all men unless they seasonably took proceedings under the bankruptcy act, to set aside as an act of bankruptcy. Boese v. King, 108 U. S. 379; In re Romanow, 92 Fed. 510; In re Sievers, 91 Fed. 366; In re Gutwilling, 90 Fed. 475.

The national bankrupt act was passed on July 1, 1898, and took effect on its passage, and it provides that a petition in involuntary bankruptcy may be filed only within four months after the commission of an act in bankruptcy, and it further provides that no petition for

involuntary bankruptcy shall be filed until four months after the passage of the act. It is apparent that it was the intention of Congress, that the law should not be retroactive, so that a person could be forced into bankruptcy courts for any act done by him prior to July 1, 1898. It was only intended to act in the future, and to take cognizance of such acts of bankruptcy as were committed after its passage. As to acts committed before its passage, there could be no collision between the bankrupt laws and the law of this Territory which we are now considering, because the bankrupt law was not and could not, under its express terms be operative as to acts committed before its passage. We can see no reason for not permitting proceedings brought under the Territorial statutes to proceed, if they are founded on acts of insolvency committed before the date when the national law could take cognizance of them. Unless this construction is held, it is obvious that the bankruptcy law might act as a shield to protect fraudulent debtors in the successful consummation of schemes forbidden both by the National and Territorial laws.

Going back to one of the earliest cases, Chief Justice Marshall says: "The States are not forbidden to pass a bankruptcy law, provided it contains no principle which violates the tenth section of the first article of the Constitution of the United States." Sturges v. Crowninshield, 4 Wheaton 196.

As the bankruptcy law of 1898 does not reach any act of bankruptcy committed prior to July 1, 1898, it is unreasonable to hold that Congress intended to deprive creditors of any vested right of property, or right of action which they had, by reason of the passage of this act. This view is set out in numerous cases in the discussion of the question arising under an amendment in 1874, to the then existing bankrupt law. This amendment which was passed on June 22, 1874, changed the time from four to two months when the transfers of

property by an insolvent should be void.

The Supreme Court of the United States says: "The rights of the parties were therefore fixed before the new law was passed. The assignee had a vested right to the securities or to their value. The defendants were under legal obligation to return these securities or to pay their value to the assignee. To hold that Congress intended by this amendatory statute to take away that right of action, is to hold that it intended by a retrospective statute to destroy a vested right of property or an existing right of action. If it be conceded that Congress could do this, the principle is too well established to need the citation of authorities, that no law will be construed to act retrospectively unless its language imperatively requires such a construction." Auffmordt v. Rason, 102 U. S. 622.

In referring to the bankrupt act of 1867, Mr. Justice Gray says:

"Under the existing bankrupt law of the United States, no judicial proceedings for the sequestration and distribution of the debtor's property, or for granting him a discharge, could be instituted until the first of June, 1867; for by the express terms of the proviso at the end of the last section, which qualifies the whole statute, 'no petition or other proceeding under this act shall be filed, received or commenced before' that day.

. . . . .

"It would require very explicit language to satisfy us that Congress intended to abolish or supersede all local bankrupt or insolvent laws four months before it established any general system of judicial proceedings in their place." Day v. Bardwell, 97 Mass. 250, and the same doctrine is held in Martin v. Berry, 37 Cal. 214; Chamberlain v. Parkins, 51 N. H. 340, and in numerous other cases.

In California and Illinois it is held that the State laws will remain operative in all cases which are not

covered by the provisions of the bankruptcy laws. Herron Co. v. Court, 136 Cal. 282; Harbaugh v. Costello, 184 Ill. 112.

In conclusion we will say that we do not regard the Territorial act we are now considering as being a bankruptcy law, but even if it was we hold that it was not suspended by the National law, and could not be as to any act of insolvency which occurred prior to July 1, 1898.

There is no error in the proceedings of the court below, and the same is therefore affirmed and the cause is remanded to the district court for further proceedings; and it is so ordered.

Parker, and McFie, JJ., concur.

Baker, A. J., having tried this cause below, took no part in this decision.