*925 OPINION.
MuRdock :
The American Telegraph and. Cable Company leased its properties to the Western Union Telegraph Company in 1882 for a term of 50 years. The provisions of that lease were quite similar to those of some of the leases here in question. In October, 1925, the Board held that the entire annual rental for 1919 was income to the cable company. See American Telegraph & Cable Co., 2 B. T. A. 991, where the subject is discussed at length. The Court of Claims in December, 1925, held that the entire rental for 1922 was income to the lessor. American Telegraph & Cable Co. v. United States, 61 Ct. Cls. 326. The Supreme Court of the United States denied certiorari in that case, 271 U. S. 660. The same question for the years 1924 and 1925 was litigated before the Board, which held that the law was unmistakably clear in support of the Government. American Telegraph & Cable Co., 17 B. T. A. 783. No appeal was taken from that decision.
The petitioners admit that these cases are directly in point and that they are supported by the authorities cited therein, particularly Rensselaer & Saratoga R. R. Co. v. Irwin, 249 Fed. 726, and West End Street Ry. Co. v. Malley, 246 Fed. 625. But they argue that the two last mentioned cases were incorrectly decided and should no longer be followed. They call our attention, to the fact that the Circuit Court of Appeals for the Second Circuit in United States v. Western Union Telegraph Co., 50 Fed. (2d) 102, expressed a doubt as to the correctness of the holding of the earlier cases that a tax might be assessed against the lessor as though the lessor had money. This doubt arose by reason of the decisions of the New York courts in Bowers v. Interborough Rapid Transit Co., 121 Misc. Rep. 250; aff'd., 202 N. Y. S. 917; 208 App. Div. 768; and Peabody v. Interborough Rapid Transit Co., 124 Misc. Rep. 801; 213 App. Div. 857; aff'd., 240 N. Y. 708. In those cases the New York courts held that stockholders who had been guaranteed “ dividends ” by the lessee of property of their corporation derived certain rights under the “ guarantee.” Just how this would work out in the present cases where the lessee was also a stockholder, we do not know. Certainly as stockholder it could gain nothing from its guarantee as lessee. In some of the present cases the lessee made no direct “guarantee” to the stockholders. The petitioners nevertheless contend that under these New York cases the income belongs to the stockholders at the time of payment and therefore can not be taxed to the lessors. Some, if not all, of these cases were brought to the attention of the Board and *926 of the Court of Claims in connection with the American Telegraph & Cable Co. cases. We still feel that they do not require a different result on the question of liability of the lessors for Federal income tax. The court in United States v. Western Union Telegraph Co., supra, avoided decision of the income question as did the court in Harwood v. Eaton, 59 Fed. (2d) 1009. We will follow the Americana Telegraph & Cable Co. cases at least until the First and Second Circuit Courts of Appeal reverse their earlier positions.
The agreement between the Southern and Atlantic Telegraph Company and the Western Union was in form not a lease but the employment of an agent. This difference does not distinguish the case of that petitioner from the others so far as the result to be reached is concerned. But before a contrary result could be reached this difference would probably have to be considered. A principal is liable for the income from the operation and use of its property even though an agent actually operates the property and disposes of the proceeds as directed in the contract of agency.
The other agreements are in form leases and no one suggests that they are anything else in fact. The four companies leased their properties for an agreed rent. Rent may be defined as a periodical payment for the use of property. It is specifically mentioned in the revenue acts as a part of gross income. The lessors owned the leased properties when the agreements were entered into. They still exist as corporations and they still own the properties. They have made no assignment of their leases. Being owners, they alone had the right to say what should be done with the rent. It was subject to their unfettered command. They were free to enjoy it at their option. They could have required that it be paid directly to them as owners, but instead they chose for their own purposes and convenience to specify that their right to receive should be enjoyed by others, their stockholders. Cf. Corliss v. Bowers, 281 U. S. 376. This was the exercise of a prerogative of ownership, an enjoyment, and a sufficient basis for the imposition of a tax. The income was nevertheless theirs from the use of their properties.
The petitioners concede that the rent would be income to them if paid to third parties in discharge of an obligation, as, for example, to bondholders or in payment of taxes of the lessor. Houston Belt & Terminal Ry. Co. v. United States, 250 Fed. 1; Old Colony Trust Co. v. Commissioner, 279 U. S. 716; United States v. Boston & Maine R. R. Co., 279 U. S. 732. But they argue that they are under no obligation to their stockholders and therefore do not own or derive any benefit from the payments to the stockholders. The use to which money is put does not determine whether or not it was income before being so used. Nor need it determine who owned the income. Rent is income of the lessor who is entitled to say what shall be done with *927 it. Why should it make any difference what the lessee agreed to pay on behalf of the lessor, whether a debt or a dividend? In either case it has applied the rent in accordance with the wishes of the lessor. If constructive receipt applies in the one case it may just as well apply in the other. Cf. Blalock v. Georgia Ry. & Elec. Co., 246 Fed. 387. The usual purpose of stockholders in organizing and maintaining their corporation is that they may ultimately receive its earnings. The earnings of these corporations were paid directly to their stockholders at the direction of the corporations. The corporations controlled, enjoyed, and benefited by their earnings in that they fulfilled the purpose of their stockholders and justified their corporate existence. A part of their control, having been exercised, no longer exists, but the enjoyment and benefit continue as each payment comes due and is paid in accordance with the agreements. Actual receipt of income is not a prerequisite of income-tax liability, nor is control of the income at the moment it becomes due. It matters not that the corporations, having elected to enjoy their income in one way, are no longer free to enjoy it in another. Their control, benefit and enjoyment would be no greater at the moment of payment had they contracted to have the payments made to bondholders with a guarantee by the lessee to the bondholders. Cf. Second Avenue Bondholders' Appeal, 198 Fed. 747.
Counsel for the petitioners tells us that the Commissioner has been consistent in his error and has allowed the Western Union Telegraph Company to deduct the full amount of the rent reserved in the leases, even though it has paid no. one the portion applicable to the share held by it in the various companies. This fact need not influence us however. Suggestion has also been made that the payments are taxable directly to the stockholders as ordinary income and not as corporate distributions. This is a collateral question only, but if it were before us for decision we would have difficulty classifying the payments as something other than corporate distributions. They were not paid to the stockholders as rent for the use of their property, for they did not own the property at any time and they were not the lessors. They received them only because they were stockholders of the corporations.
The Commissioner has determined the liability of these petitioners for excess-profits taxes under section 328 because of his inability to determine their invested capital as provided in section 326. Error was assigned in this connection by each petitioner and certain facts were stipulated in paragraphs 17 and 18, but no argument was made on these facts except as they relate to the Gold and Stock Telegraph Company. That petitioner concedes that the facts essential to a proper computation of its full invested capital under section 326 are not known. But it argues that sections 327 and 328 were intended as *928 relief legislation and ought not to be construed as imposing a tax where normally none would be due. It claims that in the taxable years it had realized appreciation on its assets to the extent of $12,357,401.80, as set forth in paragraph 17(cl) of the stipulation and “taking this figure alone of the assets * * * it makes up any deficiency of capital and establishes a surplus of sufficient amount under section [326] of the Act to give an excess profits credit of eight per centum thereof, plus $3,000 in excess of the total rental reserved in the lease, which was $300,000 per year.” Invested capital of $3,500,000 would entitle the petitioner to a credit more than sufficient to offset its income. If it can show that its invested capital would be at least that large, then we would agree that an excess-profits tax should not be computed under section 328.
The lease is not clear as to how the lessee is to account at the end of the term for the proceeds from the sale of securities belonging to • the lessor. The stipulation shows, however, that the lessee in 1920 and 1921 owned an account receivable from the Western Union, payable in 1981, in the amount of $12,357,401.30. The respondent argues that this amount would have to-be discounted to find its value in 1920 and 1921 for invested capital purposes. Some discounting may be proper, but the lessee is paying annually the equivalent of 6 per cent on $5,000,000 for the use of the petitioner’s property, and it is clear that the petitioner’s assets were worth at least $5,000,000 in 1920 and 1921. It had no liabilities. The $5,000,000 of assets which it had in these years must have been either earned or paid in under circumstances which would create invested capital under section 326. Obviously its invested capital was more than sufficient to give it a credit in excess of its income.
The petitioners made one additional jxfint which, they confess, finds no support in the terms of the statute or in any decided case. They claim that they were not doing business during the taxable years and the excess-profits provisions were not intended to reach them. These provisions apply to all corporations not specifically exempt.

Fwrther 'proceedings wider Rutile 6£(c).