*271 OPINION.
Murdock:
In the case of Gold & Stock Telegraph Co., 26 B. T. A. 914, we held that the entire rental for the years 1920 and 1921, provided for in the agreements which Western Union Telegraph Company had with Gold & Stock Telegraph Company and Pacific and Atlantic Telegraph Company of the United States, was income to the lessors. In the present proceedings similar questions are raised in regard to rental under these two leases for the year 1926. On this point we adhere to our prior decision and the cases therein mentioned, without further discussion.
There is no contention in this case that the petitioner is liable in law under any contract or agreement for the taxes in controversy. The question whether the petitioner is liable in equity as a transferee of property of these taxpayers in respect of the tax imposed upon the taxpayers for this year remains. Section 280 created no new liability. Phillips v. Commissioner, 283 U. S. 589. The term “ transferee ” includes a distributee. Sec. 280 (f). In proceedings *272 before the Board the burden is upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer. See section 602 of the Revenue Act of 1928.
The petitioner relies very strongly upon United States v. Western Union Telegraph Co., 50 Fed. (2d) 102, and Harwood v. Eaton, 59 Fed. (2d) 1009, as well as upon two decisions of the courts of New York cited in these two Federal court cases. We digress, therefore, so that our consideration of the present cases may be had with a proper appreciation of these cases and their effect, or lack of effect, upon the question which we must decide. The New York cases to which we refer are Bowers v. Interborough, Rapid Transit Co. and Peabody v. Interborough, Rapid Transit Co. The Bowers, case was first decided by Judge Gavegan of the Supreme Court of New York County, 201 N.Y.S. 198, and affirmed by the Appellate Division, First Department, without opinion, 202 N.Y.S. 917. Thereafter, the Peabody case came before Judge Ford of the Supreme Court of New York County, 209 N.Y.S. 376, was affirmed without opinion by the Appellate Division, First Department, 209 N.Y.S. 893, and was finally affirmed without opinion by the Court of Appeals, 240 N. Y. 708; 148 N.E. 768. One must look, apparently, to the opinion of Judge Gavegan for the rationale of these decisions. We are unable to perceive how these two cases have any bearing upon the question before us. In each, individual stockholders of a lessor corporation brought suit against the lessee to require it to pay them amounts which the lessee had agreed and guaranteed to pay directly to the stockholders of the lessor corporation. Decisions in favor of the rights of the individual stockholders to sue the lessee directly were based upon the presence in the lease of what was termed a “guaranty.” Judge Gavegan, in his opinion, merely interpreted the provisions of this guaranty and held that it was an undertaking additional to the agreement to pay the rent to the lessor, intended to give the stockholders additional rights and remedies, and, whereas the failure to pay the rent was a breach affecting the stockholders indirectly, the guaranty was an undertaking running directly to them. Cases such as Beveridge v. New York Electric Ry. Co., 112 N. Y. 1; 19 N.E. 489, and Flagg v. Manhattan Ry. Co., 10 Fed. 413, were distinguished on the ground that in those cases there was no express agreement with or direct obligation to the stockholders. The present petitioner, like Bowers and Peabody, is a stockholder in the lessor companies, but, unlike Bowers and Peabody, it is also the lessee and so-called guarantor. It may legally occupy the dual position of lessee and stockholder in the lessor. But a paradoxical situation arose in so far as it purported to make any guarantee on the stock which it held itself. So long as it held shares of stock in the lessor companies, its so-called guaranty, in relation to those *273 particular shares of stock, was vacuous. Therefore, in deciding the present case, we can obtain no benefit from the Bowers and Peabody cases. For the reasons already given, we should likewise disregard the two Federal court decisions in so far as they rely upon the two New York cases.
There are other reasons why the Western Union Telegraph Co. case is not direct authority here. It was a suit by the Government to impress a lien for taxes due for the years 1917 to 1920 from the North Western Telegraph Company upon funds in the possession of the Western Union Telegraph Company, which, by agreement, the latter paid to the shareholders of the former. The court held that no lien could be impressed upon the payments in the hands of the lessee. Our question is a different one. Here the Government contends that, since the payments have constructively passed through the lessor and into the hands of its stockholders, the petitioner is liable as a stockholder-transferee for the tax imposed upon the lessor. Furthermore, the report does not show that Western Union was a stockholder of North Western, whereas in our cases Western Union was not only the lessee and guarantor, but also owned a majority of the stock of the lessor corporations. The Harwood decision, to which we have had reference, was on a demurrer. The case has been decided on the merits since the preparation of this report. 59 Fed. (2d) 1009. It may or may not be distinguishable, but at least it differs from our cases in that Harwood was simply a stockholder, not also lessee, and the lease made no mention of dividends. There is no indication in the report that Western Union was a stockholder of the Empire and Bay State Telegraph Company. We must, therefore, decide the present cases without giving undue regard to the two cases just mentioned.
The respondent contends that the petitioner is liable in equity under what he calls the “ trust fund theory.” The liability of a transferee in equity may arise in various ways, and it is unfortunate that one or all of these ways was ever called the “ trust fund theory.” The alleged liability here does not result from a distribution to stockholders of the amount paid in for their stock, nor from a situation where a corporation transfers its assets for stock without proper provision for its existing debts, as sometimes arises in connection with consolidations or mergers. Cf. Fostoria Milling & Grain Co., 11 B.T.A. 1401. The petitioner, as a stockholder, has received or retained property of the taxpayer. Under municipal law, is the petitioner liable, to the extent of the property received, for taxes of the taxpayer which were imposed by Federal law for the year 1926?
There is a distinction between transfers by a going solvent corporation and those made by a corporation when it is insolvent or when it becomes insolvent as a result of the particular transfer in *274 question. Courts have said that property transferred under the latter circumstances is a trust fund for the benefit of creditors, who may take it from the hands of the transferee to the extent of the property received or the debt, whichever is smaller; that is, that an equitable lien in favor of creditors attaches to the property of the corporation. Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371; McDonald v. Williams, 174 U. S. 397; In re Feckheimer Fishel Co., 212 Fed. 357. See also Wood v. Dummer, 3 Mason 308, where the words “ trust fund ” were first used in this connection. A reason sometimes given for such a rule is that the transfer amounts to a fraud, either actual or constructive, upon those to whom the corporation is obligated. But on one ground or another courts have attempted persistently to give equitable relief to those having a superior right to corporate property. Cf. Bailey v. Hornthal, 154 N. Y. 648; 49 N. E. 56. Application of the rule depends upon the meaning which attaches to the word “ insolvent ” as used therein. This word has several different meanings. Toof v. Martin, 80 U. S. 40. The Bankruptcy Act of 1898 specifies that it means an excess of debts over the aggregate of the debtor’s property when the latter is fairly valued. Some courts have held that this is the general and usual meaning. Marvin v. Anderson, 111 Wis. 387; 87 N. W. 226; Grumsfeld v. Brownell, 12 N. M. 192; 76 Pac. 310. However, the word need not be so narrowly defined in connection with transferee liability. It may also mean an inability to meet obligations as they mature in the regular course of business by means of available assets or a legitimate use of credit. Cf. Toof v. Martin, supra; Hayden v. Chemical National Bank, 84 Fed. 874; Brower v. Harbeck, 9 N. Y. 589, 594; Baker v. Emerson, 38 N. Y. S. 576; Lodi Chemical Co. v. Charles H. Pleasants Co., 54 N. Y. S. 668; French v. Andrews, 30 N. Y. S. 796. Another definition is that a debtor has no property which a creditor can reach by legal process for the satisfaction of his debt. The latter rule is sometimes stated as a rule of evidence, i. e., proof that there is no property which a creditor can reach, is evidence of insolvency on the part of the debtor. Terry v. Tubman, 92 U. S. 156; Bartlett v. Drew, 57 N. Y. 587; Fletcher Cyclopedia Corporations, vol. 8, §§ 5008-9.
The petitioner contends that each lessor was a solvent going concern when it entered into the lease with Western Union; the taxes in question had not accrued and were not even contemplated; the transfers were made at those times by the lessor corporations to their stockholders and did not render the corporations insolvent; at least the evidence does not show any insolvency at those times; the stockholders of the taxpayer companies derived their rights to receive the payments from these leases; these rights came to partial *275 fruition in 1926 without any further act upon the part of the taxpayers; thus, the Commissioner has failed to show that the petitioner is liable as a transferee for the 1926 taxes. The taxes for the year 1926 had first to accrue before any transferee liability could arise. The Commissioner relies upon transfers in 1926 and early 1927, resulting from the distribution of the rental payments for 1926. Moreover, he may be able to follow the income of the taxpayers even if there was no technical transfer of this property. Cf. Hatch v. Morosco Holding Co., 50 Fed. (2d) 128. We know that taxes for the year 1926 were assessed, payment was demanded, warrants for distraint were returned unsatisfied, and the entire assessments remain unpaid. Yet these circumstances do not show that the taxpayers were insolvent when the 1926 rental was distributed. Determination and assessment of and distraint for the 1926 taxes took place long after the 1926 rentals were discharged. Thus, the time element robs these facts of any importance which they might have otherwise in showing insolvency when the 1926 payments became due. However, the contract was carried out as to later years and later rentals retained by Western Union, as a stockholder, exceeded the amount of the deficiencies.
Although the case of United States v. Western Union Telegraph Co., supra, is not directly in point, nevertheless that opinion indicates that the Government has no remedy at law. Counsel for the present petitioner makes no contention that the taxpayers had any property which the Government could reach by legal process for the satisfaction of the taxes due it. Cf. United States v. Fairall, 16 Fed. (2d) 328; Rensselaer & S. R. R. Co. v. Irwin, 249 Fed. 726; certiorari denied, 246 U. S. 671. The stipulation shows that the property of the taxpayers is not being managed by and is not in the possession of the taxpayers; it has been intermingled with that' of Western Union; and at no time has either taxpayer had in its possession property of any description upon which the Government might levy to enforce payment of any Federal income taxes which might be due. In the light of the facts as stipulated, the decision in the Western Union case, supra, and the petitioner’s brief, we are justified in holding, for the purpose of this case, that the taxpayers at no time had property which the Government could reach by legal process for the satisfaction of the tax liability of the! two taxpayers for the year 1926. The taxpayers have not met their tax obligations and without the rent payments they apparently had no way to pay their income taxes, had they desired to pay. In short, if they are to be tested by either of the two latter definitions of insolvency given above, they were insolvent.
The Government, seeking payment of income taxes, is not like a creditor of a corporation who extended credit with full knowledge *276 of the lease agreement. Cases involving rights of such a creditor are not in point. Debts are obligations for the payment of money founded upon, contract, express or implied. Taxes are imposts levied for the support of the Government. Taxes operate in invitvm. Meriwether v. Garrett, 102 U. S. 472, 513. They are of a higher nature than debts. United States v. McHatton, 266 Fed. 602. Stockholders “ do not occupy the position of strangers, who have taken for value, in good faith, and without notice of corporate obligations either fixed or potential.” United States v. Updike, 8 Fed. (2d) 913; certiorari denied, 271 U. S. 661. Cf. Pierce v. United States, 255 U. S. 398. The two New York decisions discussed above had to do with the rights of stockholders under a lessee’s guarantee and their remedies against the lessee. But the rights of stockholders to the property of their corporation are entirely different. Cf. American Telegraph & Cable Co. v. United States, 61 Ct. Cls. 326. A corporation can not directly or indirectly distribute its assets among its stockholders nor allow stockholders to withdraw its assets, except in the payment of dividends out of profits and after lawful obligations have been met. Bartlett v. Drew, supra. The right to contract is not absolute in all matters. Knoxville Iron Co. v. Harbison, 183 U. S. 13. The lease agreements were legal and effective for many purposes and no doubt gave the stockholders certain rights even as against the corporations. Cf. Scovill v. Thayer, 105 U. S. 143. But the rights of the stockholders to corporate property at all times were subject to a superior potential right on the part of the Government to impose taxes upon the corporation and collect those taxes from the income of the corporation. Cf. Louisville & Nashville R. R. Co. v. Motley, 219 U. S. 467; Knox v. Lee, 12 Wall. 457, 550, 551. When the Constitution was amended and income taxes imposed upon the corporations, the right of the Government to collect such taxes from corporate property took precedence over the right of the stockholder to continue to receive that property.
The varying definitions of insolvency, the diversity in reasoning which shades of difference in cases have elicited, and the controversy which has raged in regard to the “ trust fund doctrine,” indicate the improbability of any satisfactory all-inclusive general rule covering equitable liability. Yet, despite conflicting reasoning in opinions and texts, the decision of actual cases has not been so difficult. Therefore, in the final analysis, we must seek the decision of this case in its particular facts. These corporations have parted with their property and have gotten nothing in return which the Government can take for taxes. Instead, the consideration for the use of the properties under the agreement is to be paid directly to the stockholders, as if the corporations had been paid and had declared divi- *277 ¿lends. If the corporations had sold their properties at a taxable profit, the proceeds of the sales, paid by agreement to the stockholders, could be followed for the purpose of collecting the tax on the sale. Cf. United States v. McHatton, supra. So here, since no remedy is available at law to the Government, we think equity under the local law would follow the income from the properties into the hands of the stockholders and make it liable for the tax, because the stockholders have this property which ought to be applied to the payment of taxes of their corporation. Cf. Bartlett v. Drew, supra. We, therefore, hold that there is a liability in equity on the part of this stockholder to pay these taxes of the corporations from its retained share of the payments which have become due since the obligation to pay the taxes accrued. Cf. United States v. Updike, supra; United States v. Armstrong, 26 Fed. (2d) 227.
Reviewed by the Board.

Judgment will be entered for the respondent.